[Civ. No. 3152. Second Appellate District, Division One.—June 7, 1920.]

NICK SUTTORI, Appellant, v. J. J. PECKHAM et al., Respondents.

[1] FISH AND GAME—ACTION FOR CONVERSION OF FISH—OWNERSHIP AND RIGHT OF POSSESSION — EVIDENCE — FINDING.—In this action for damages for alleged conversion by the defendants, a deputy sheriff and a justice of the peace, of a quantity of fish, the court was justified in believing from the evidence that all of the fish in question had been taken by the plaintiff with a net from the waters of the Pacific Ocean within three miles from the shore of Santa Catalina Island and, therefore, in finding that plaintiff was not the owner nor entitled to possession of the fish.

[2] ID.—REGULATION OF TAKING — PENALTY FOR VIOLATION — LEGISLATIVE POWER.—Laws regulating the taking of wild game and fish and imposing penalties for the violation of such laws are fully within the legislative power of the state and do not destroy any right of property.

[3] ID.—OWNERSHIP OF FISH IN STATE—ILLEGAL TAKING.—The general right and ownership of fish within our waters is in the people of the state, and no person can acquire title or right of possession to such property by the act of taking possession thereof illegally.

[4] ID.—FISHING RIGHTS AROUND ISLANDS—JURISDICTION OF STATE.— The state of California has jurisdiction over the subject of fishing rights to the distance of three miles from the shore of any island which is a part of the state, as well as to the distance of three miles from the shore of the mainland.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Pendleton and B. M. Marble for Appellant.

A. J. Hill, County Counsel, and J. Allen Davis, Deputy County Counsel, for Respondents.

CONREY, P. J.—Action to recover damages for alleged conversion by the defendant of five tons of fish, being the

_____

4. Right to fish in navigable waters, note, 21 Ann. Cas. 777.

property of the plaintiff. Judgment in favor of the defendants, and the plaintiff appeals therefrom.

The court found that at the time of the alleged conversion the plaintiff was not the owner of nor was he entitled to the possession of the fish mentioned in the complaint; and that it was not true that at said time, and while the plaintiff was the owner of and entitled to the immediate possession of the said fish, the defendants wrongfully took and carried away said personal property and converted the same to their own use. Appellant contends that these findings are not sustained by the evidence.

All of the fish included in this controversy were white sea bass. According to the testimony produced by the plaintiff, he was the master of a boat called the "Jupiter," and on the twenty-fifth day of June, 1917, with his crew, he was fishing in that boat at Santa Barbara Island. Off the coast of that island, according to his testimony, he caught four tons of sea bass. Later in the day, and while four miles distant from Santa Catalina Island, he cast his net and caught in it about three tons of sea bass. The run of the tide and the pull of the loaded net drifted the boat to a point which was a mile or less from the shore of the island. At this place the defendant Staples, who was a deputy sheriff of the county of Los Angeles, overhauled the boat, arrested the men, and took the whole outfit to Avalon, Catalina Island, being in the township where the defendant Peckham was justice of the peace. Here the fish were landed. A complaint was filed before the justice, sitting as a magistrate, charging the plaintiff and members of his crew with the crime of misdemeanor committed by violation of the provisions of section 636 of the Penal Code. The defendants were held to answer and an information was afterward filed against them in the superior court by the district attorney, which information was afterward dismissed by the court. After taking possession of the fish, the defendant Staples telegraphed to the fish and game commissioner at Los Angeles, stating what he had done and asking what disposition he should make of the fish. The commissioner declined to act officially in the matter, as Staples was not a deputy of the commissioner; but the commissioner conferred with the sheriff and telegraphed Staples that the sheriff "advised to hold about one hundred pounds fish as

evidence and return rest to fishermen." On the same day, June 26th, Peckham, purporting to act as justice of the peace, made an order entitled in the cause pending before him in which he recited that the fish were liable to spoil unless disposed of, and ordered Staples to ship and deliver the fish to the "Los Angeles Examiner," a newspaper in the city of Los Angeles, for free distribution by said newspaper to the poor of said city. Staples then sent to the "Los Angeles Examiner" the said fish, or so much thereof as was in a condition fit for shipment.

The defendant Staples testified that he only took the fish which he knew were alive when he made the arrest; that they were all alive when he went aboard the boat; that the fish would not live more than fifteen minutes after being taken out of the net. James J. Bates, a witness for the defendants, by occupation a fisherman, testified that he had had extensive experience in fishing in the waters of the Pacific Ocean. Concerning the habits of the white sea bass, he stated that they are migratory fish. "Ordinarily I would not say that you could find these white bass upon the surface out from the shore three or four miles. . . . I don't think I have ordinarily seen these out at sea; I would not see them more than three miles away from shore ordinarily." The defendant Staples, testifying concerning the habits of white sea bass, said: "White sea bass are around the island all summer. I have never seen a school of white sea bass on the surface away from shore."

[1] From the evidence thus produced, the court was justified in believing that all of the fish in question had been taken by the plaintiff with a net from the waters of the Pacific Ocean within three miles from the shore of Santa Catalina Island. This fact was sufficient to justify the court in finding that the plaintiff was not the owner nor entitled to possession of the fish, if the taking of the fish with a net and within three miles of that island was prohibited by law and was a criminal act. "The fish within our waters constitute the most important constituent of that species of property commonly designated as wild game, the general right and ownership of which is in the people of the state (*Ex parte Maier,* 103 Cal. 476, 483, [42 Am. St. Rep. 129, 37 Pac. 402]), as in England it was in the king; and the right and power to protect and preserve such prop-

erty for the common use and benefit is one of the recognized prerogatives of the sovereign, coming to us from the common law, and preserved and expressly provided for by the statutes of this and every other state of the Union.'' (*People* v. *Truckee Lumber Co.,* 116 Cal. 397, [58 Am. St. Rep. 183, 39 L. R. A. 581, 48 Pac. 374].) [2] Laws regulating the taking of wild game and fish and imposing penalties for the violation of such laws are fully within the legislative power of the state and do not destroy any right of property. (*Ex parte Kennke,* 136 Cal. 527, [89 Am. St. Rep. 177, 69 Pac. 261].) [3] It should need no citation of authorities to establish the proposition that no person can acquire title or right of possession to property of the state by the act of taking possession thereof illegally. But the plaintiff cannot maintain this action if at the time of the alleged conversion he had neither ownership nor right of possession in the goods alleged to have been. converted. (*Hilmer* v. *Hills,* 138 Cal. 134, [70 Pac. 1080].) This brings us to a consideration of the statutes regulating the taking of fish.

The act of taking fish other than with hook and line ''within three miles of shore line of Santa Catalina island'' is a misdemeanor, according to the provisions of section 634½ of the Penal Code. The act of taking fish with a net within the limits of fish and game district No. 20 is made a misdemeanor by the terms of section 636, subdivision 7, of the Penal Code. In section 21 of the act to divide the state of California into fish and game districts (Stats. 1915, p. 589), it is provided that ''fish and game district twenty shall consist of and include the island of Santa Catalina, with the state waters surrounding said island.'' If the state waters surrounding that island extend three miles from the shore of the island, then the territorial limits described in section 634½ of the Penal Code are identical with district 20. [4] Appellant, while conceding that the sovereignty of the United States ''extends one marine league at sea in all directions from the shore of the island in question,'' contends that the state of California has no jurisdiction over any of the waters surrounding any of the islands along this coast below low-tide water mark. The boundaries of the state of California, as declared in its first constitution [Const. 1849, art. XII] and recognized by the act of Congress admitting the state into the Union, are defined as extending ''three English

miles" into the Pacific Ocean. "Also all islands, harbors and bays along and adjacent to the coast." The sovereignty and jurisdiction of this state extend "to all places within its boundaries as established by the constitution," subject only to the terms of any cession or law under which any part of such places has been or may be ceded to, purchased, or condemned by the United States. (Pol. Code, sec. 33.) Under these conditions it has been held that a liability created by a California statute for the act of one person causing the death of another was enforceable where the tortious act was committed on a ship at sea two miles from the shore of the mainland. The court held that "the jurisdiction of the state of California over the sea is that of an independent nation"; and cited authorities to the effect that such jurisdiction extends into the sea to the distance of a marine league. (*Humboldt Lumber Manufacturers' Assn.* v. *Christopherson,* 73 Fed. 239, [46 L. R. A. 264, 19 C. C. A. 481].) There appears to have been no decision made hitherto, either sustaining or overruling the contention here made by appellant, viz., that jurisdiction over the waters surrounding any of the islands along the California coast below tide water mark was never conferred upon the state of California. It is our opinion that the contention so made by appellant is without merit. It has been said that the term "coasts" includes "the natural appendages of the territory which rise out of the water, although these islands are not of sufficient firmness to be inhabited or fortified." (Wheaton's International Law, 8th ed., sec. 178.) It is not denied that Santa Catalina Island is within the state of California and is a part of the county of Los Angeles. Every reason which in the nature of things justifies the state in extending its jurisdiction over the subject of fishing rights to the distance of three miles from the shore of the mainland, equally applies to a like distance from the shore of any island which is a part of the state.

Appellant suggests that subdivision 7 of section 636 of the Penal Code, in so far as it applies to district twenty, is unconstitutional and void on the authority of *Ex parte Bailey,* 155 Cal. 472, [132 Am. St. Rep. 95, 31 L. R. A. (N. S.) 534, 101 Pac. 441]. That decision declared void a municipal ordinance which prohibited the use of fish nets and seines at places less than one thousand feet from any wharf, dock,

or pier located in said town. The court held that the evident object of the ordinance was to protect fishing with hook and line from the wharves of the town. For that reason it was decided that the ordinance was an attempted interference with the exclusive right of the people of the state in the ownership of wild game and fish and of the state to the control thereof. The case does not at all sustain appellant's position.

The conclusions above stated render it unnecessary to discuss other grounds of appeal presented by appellant and discussed in the briefs.

The judgment is affirmed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 5, 1920.

All the Justices concurred except Sloane, J., who was absent.