[No. 26943. Department Two. February 21, 1938.]

JOSEPH SUSSMAN, *Appellant,* v. ELIZABETH E. MENTZER, *as Executrix, Respondent.*[1]

H. J. Gielens, for appellant.

*Frank C. Owings* and *C. J. Mentzer,* for respondent.

[1]Reported in 76 P. (2d) 595.

518

BEALS, J.—Joseph Sussman, the plaintiff in this action, sued Elizabeth E. Mentzer, as executrix of the will of the late Theodore F. Mentzer, claiming that defendant's testator had converted certain property belonging to the plaintiff, to plaintiff's damage in the sum of $465. It was admitted by the answer that a claim had been filed in the estate and rejected. The other material allegations of plaintiff's complaint were denied in defendant's answer. The cause came on regularly for trial before the court, sitting without a jury, and at the close of plaintiff's case, the defendant moved for a nonsuit, which motion the court granted. From a judgment of dismissal, the plaintiff has appealed.

From appellant's evidence, it appears that, during the month of July, 1935, he, together with George Vidak, his buyer, visited the site of an old lumber mill near Johnson's creek, in Thurston county, and inspected three boilers and some scrap iron, the latter of small value, with the idea of purchasing the same. The next day, appellant paid Cyrus Mentzer (also referred to as C. A. Mentzer), the president and manager of Mentzer Bros. Lumber Company, twenty-five dollars for the boilers and scrap iron, receiving from him a bill of sale running to Tacoma Junk Company, signed by Mentzer Bros. Lumber Company, by C. A. Mentzer, president. Within two weeks thereafter, appellant sent three trucks to carry the boilers and iron to his junk yard in Tacoma, but upon arrival at the mill site, it was discovered that the property had all been removed.

One H. J. Horst, who resided near the old mill site, called as a witness for appellant, testified that he had resided nearby for about twelve years, and that he was well acquainted with Theodore F. Mentzer, a stockholder in Mentzer Bros. Lumber Company; that

the witness, as a mere volunteer, exercised some care over the property; that, shortly after appellant's visit to the mill site, certain persons, who were unknown to the witness, appeared with trucks and proposed to remove the boilers and iron; that the witness Horst spoke to these people, asking for their authority to take possession of the property, and that there was then exhibited to the witness a paper, signed by Theodore F. Mentzer, with whose signature the witness was familiar.

The witness testified that "they showed me what I took for a bill of sale," and that it stated that "this man" had offered Mr. Mentzer a certain sum—he thought twenty-five dollars—for the boilers and scrap iron, and that Mr. Mentzer had accepted that amount. The witness could not state whether or not the document contained any reference as to location or place. He further testified that it was written in "very illegible longhand," and that, as to Mr. Mentzer's handwriting:

"A. The signature, you could nearly always tell whose it was, but the writing itself you would read about every third word and guess at the rest. Q. You don't know whether there was an offer on Mr. Mentzer's part and an acceptance of that offer on Mr. Sussman's part or not? That is, you only read one word in three? A. Well, you could very near come to the conclusion, reading that much, what the letter was wrote about, the bill of sale, or whatever it might be."

Cyrus Mentzer testified that he was the president and manager of Mentzer Bros. Lumber Company, and that July 27, 1935, he sold the boilers and scrap iron to appellant, and executed the bill of sale which was introduced in evidence, and which is signed "Mentzer Bros. Lbr. Co., by C. A. Mentzer, President;" that he acted for the corporation, owned a majority of the stock, and was president and manager. He further testified that the business of the corporation "had been

pretty well wound up," and it is clear, from the witness' testimony, that the property of the corporation had been, by the court, ordered divided.

The witness further identified a deed, dated July 1, 1933, from Mentzer Bros. Lumber Company to T. F. Mentzer, conveying to the grantee an undivided fifteen-fortieths in and to a large amount of real estate in Thurston county, evidently including the mill site on which the boilers were standing. The witness further stated that other undivided interest in the land should, under an order of court, be conveyed by the corporation to the witness and to his daughter.

On re-direct examination, the witness testified that, during the month of May, 1935, he received a letter from his brother, T. F. Mentzer, to the effect that a junkman from Centralia had offered forty dollars for the boilers and scrap, and that he (T. F. Mentzer) would not make a sale unless the witness approved it.

The old boilers were standing upon the original brick bases, appellant stating that "they were in the brick yet," the evidence showing that the mill had burned. The boilers, then, were still attached to the real estate. *Zimmermann v. Bosse*, 60 Wash. 556, 111 Pac. 796.

Appellant alleged and sought to prove title to the boilers in himself, and must recover herein, if at all, upon the strength of his own title, without regard to the weakness of that of his adversary. 26 R. C. L. 1131, § 41.

Appellant relies upon the bill of sale, signed by Mentzer Bros. Lumber Company, by C. A. Mentzer, president. The only evidence as to the title of this corporation was given by the witness Mentzer, who testified that the corporation had owned the boilers since 1914, but that, two years prior to the transaction with appellant, the corporation had deeded to T. F.

Mentzer an undivided fifteen-fortieths interest in the real estate owned by the corporation. This deed is in evidence. The witness also admitted that the court had directed him to convey other interests in the real estate to himself and his daughter, respectively.

The evidence clearly indicates that T. F. Mentzer, for two years prior to the transaction upon which appellant bases his claim, had personally owned an undivided interest in the property. This is corroborated by evidence to the effect that T. F. Mentzer was trying to sell the boilers and wrote to C. A. Mentzer, informing him of that fact and advising the latter that he would not sell them without C. A. Mentzer's consent. The corporation had conveyed an undivided interest in the property long prior to the deal with appellant.

The evidence as to any alleged conversion by T. F. Mentzer is vague and indefinite in the extreme. The only evidence on this phase of the case was given by the witness Horst, who testified, as above stated, that some men came on the property and removed the boilers, showing him some sort of a paper bearing T. F. Mentzer's signature. This action was not commenced until November, 1936, over a year after the alleged conversion, but it does not appear that appellant made any effort to ascertain from T. F. Mentzer what had become of the property, or whether or not T. F. Mentzer had, in fact, through himself or his agent or vendee, taken possession thereof. After Mr. Mentzer's death, this action was instituted. The trial court was of the opinion that no conversion had been shown sufficient to bind respondent as executrix of the estate of T. F. Mentzer, and with this conclusion we agree. Clearly, appellant failed to show any conversion by respondent's testator.

Another matter disclosed by the record should be noticed. In paragraph one of his complaint, ap-

pellant stated that he was "doing business under the name and style of Tacoma Junk Company, and also under the name and style of Tacoma Steel & Equipment Co.," and that he had filed his certificate, properly acknowedged, in the office of the clerk of Pierce county. This paragraph was expressly denied in respondent's answer. Appellant introduced in evidence, as his exhibit B, a certified copy of a "certificate of firm name," which had been regularly filed in the office of the county clerk September 22, 1919, certifying that Joseph Sussman and Frank Sussman were conducting a business as copartners under the firm name and style of Tacoma Junk Company.

The matter of the making and filing of such certificates is covered by Rem. Rev. Stat., § 9976 [P. C. § 4356] et seq., § 9978 [P. C. § 4358] providing that, in case of change in ownership or interest in a business conducted under an assumed name, a further certificate shall be filed "before conducting or transacting any business whatsoever." Section 9980 [P. C. § 4360], provides that no person conducting business under an assumed name shall be entitled to maintain a suit in any court of this state without alleging or proving that the certificate required by the act has been filed. Certainly, the certificate offered and received in evidence is not in accord with the allegations of paragraph one of appellant's complaint.

We are, however, of the opinion that the trial court correctly ruled that appellant had failed to make even a *prima facie* case on the main facts. The evidence shows neither complete title to the boilers in Mentzer Bros. Lumber Company, appellant's vendor, nor conversion of the property by T. F. Mentzer.

Judgment affirmed.

STEINERT, C. J., MILLARD, BLAKE, and ROBINSON, JJ., concur.