NOVAK ET AL. *v.* STATE

[No. 115, October Term, 1949.]

58

*Decided April 14, 1950.*

*Motion for Modification of Opinion denied May 17, 1950.*

The cause was argued before MARBURY, C. J., and COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*C. Ferdinand Sybert* and *T. Edward O'Connell,* for appellant.

*Harrison L. Winter, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by petitioner from an order denying her petition for return to her of the "sum of about $12,000" seized under a search warrant and ordering the $12,025 in currency so seized to be turned over to the Board of Trustees of the Retirement and Pension System of the Maryland State Police.

On June 5, 1948 the State Police, under a search warrant, raided a place called "Rocway Towers", on the Baltimore-Washington Boulevard, near Laurel, in Howard County and seized a large quantity of paraphernalia, including $32,123.00 in currency, alleged to have been there used in unlawful gambling. Twenty-one men were arrested, indicted and tried and nineteen were convicted of violations of the gambling laws and sentenced to the House of Correction for a year. At the trial the $32,123.00 seized was produced and offered in evidence. No appeals were taken, no other prosecutions growing out of the raid are now pending, and there is no further need to hold the money for use as evidence.

On August 25, 1948 one of the men convicted filed a petition for return to him, as the lawful owner, of $20,000.00 of the money seized. After a hearing the lower court on May 17, 1949 ordered the $20,000.00 to be so returned, and filed a full opinion holding that this money had been used in unlawful gambling but, in the absence of statutory authority to confiscate it, must be returned to its lawful owner, who had been convicted of such unlawful gambling. *Penny v. Maryland State Police,* 186 Md. 10, 45 A. 2d 743.

On June 4, 1949 appellant filed her petition alleging that the police had seized "a suitcase containing the cash sum of about $12,000 [$12,025] the property of * * * petitioner", and that this money [part of the $32,123.00] "was taken from the private apartments of * * * petitioner, and represents her savings, and had no connection, in any way, with the operation of gaming tables in 'Rocway Towers' which were in another part of the building", and praying an order for return to her of

60

"said sum of about $12,000, which she hereby claims belongs to her." The police superintendent filed an answer denying that the $12,025 was the property of appellant and claiming it on behalf of the Board of Trustees of the Retirement and Pension System of the Maryland State Police, as "abandoned and unclaimed" money. After a hearing the court on September 19, 1949 filed an opinion and an order denying the petition and ordering the money to be turned over to the Board of Trustees. From this order appellant now appeals.

At the time of the raid and for some years before appellant, who is eighty-six years old, lived in an apartment on the second floor of Rocway Towers, which was a two-story building. The gambling-room was on the first floor. The stairway leading to her apartment was within the building, but the entrance was from the outside. At the top of the stairway, to the left of a landing, was a closet or storeroom about five feet square. There was a dumb-waiter in this storeroom, leading down to the kitchen on the first floor. Inside this storeroom was a smaller closet just about large enough to hold a suitcase. Appellant's apartment was a large room to the right of the landing. Appellant had keys (so far as is shown, the only keys) to the entrance to the second floor, to her room and to the storeroom. At the hearing she testified that she had a key to the inner closet. There was no interior access (except by the dumb-waiter) between the first and second floors, and none (other than across the landing) between appellant's apartment and the storeroom. She testified that she knew nothing about the dumb-waiter; the police testified that she told them she used it to take garbage downstairs.

The place was raided downstairs about midnight, upstairs about 12:45 A.M. The police first searched the first floor and seized two "craps" tables and a large quantity of paraphernalia ordinarily used in gambling. They then went to the second floor, breaking the outer door. Appellant was in bed. She unlocked for the police the door to her apartment and the door to the storeroom.

They say she said she had no key to the inner closet. The State says the lock on the inner closet was a padlock and at the hearing appellant produced no key to a padlock. The police broke the lock and found in the closet "a suitcase and several old articles of clothing; there was an old green hat with some feathers on it." Presumably the hat was a woman's hat, not to mention the other clothing. The suitcase, which was unlocked, contained the $12,025, mostly $100 bills, and a cloth or table cover on which a chart, used in certain dice games, was laid off, and also (appellant says) her eyeglasses, which she had put in the suitcase. The police say they asked her whether either the suitcase or the money belonged to her and she said not.

Appellant has a daughter, who testified for her, and a son, Johnny Maddock, who lived near Rocway Towers, and who did not testify. At the hearing and in the opinion of the court it was broadly intimated, but not shown as a fact by evidence, that before the raid Johnny was operating Rocway Towers, he may have been fortunate to be absent the night of the raid, may have thus escaped arrest, indictment and conviction with the nineteen then arrested and later convicted, may have been the owner of the $12,025, and may have omitted to claim it for fear that a hearing might disclose guilt on his part.

Appellant testified that the money was hers, that she had been saving it for 20 or 25 years, that she got insurance when her husband died, 17 years ago and when two daughters died, one in 1922, one 8 or 9 years ago, and that she worked.

The lower court, after seeing and hearing appellant testify, reviewed her testimony and other testimony and refused to believe that she owned the money, held that she failed to meet "the burden of establishing that the money *actually belonged* to her," and incidentally held that the money was not in her possession—apparently because she did not have the key to the inner closet, and

perhaps because of possible access to the storeroom by the dumb-waiter.

We do not concur in the view that the money was not in appellant's possession. A dumb-waiter is not a passenger elevator, though it conceivably might, like a fire escape, be used by thieves as a means of access. Dumb-waiters in apartment houses are not unknown. The storeroom was not a safe deposit vault, and neither the inner closet nor the suitcase was a safe deposit box. A man is not out of possession of his own house or apartment because he may give front-door keys to his adult children or other relatives or friends who do not live with him, or may lose or turn over to some one a closet key, or may leave upstairs windows (accessible to a fire escape) or the front door open in warm weather, or because he may do all of these things.

Section 18A of Article 88B of the Code, 1947 Supplement, (Act of 1943, ch 636), provides that, "Whenever any personal property of any kind, except money, comes into the custody of the Department of Maryland State Police and the * * * person * * * entitled to possession of the same cannot be located and fails to claim the same for a period of one year after it came into custody of said Department", the Superintendent may "dispose of the same at public sale" in manner prescribed. After deducting from the proceeds of sale expenses and liens, the balance "shall be paid into the Pension Fund of said Department; and all lost, abandoned, unclaimed or stolen money shall also be paid into said Fund. If the owner or the * * * person * * * entitled to any money in the custody of said Department or to the possession of personal property, sold as aforesaid, shall present to the Superintendent a claim, duly sworn to, for such money at any time within three years from the date when it came into the custody of said Department, or, at any time within three years from the date of such sale, a similar claim for the balance remaining from the proceeds of such sale, the Superintendent shall cause to be paid from said Pension Fund the amount of such money

or of such balance, without interest, in either case, to such claimant as may be legally entitled thereto." If no claim is made within three years, "such balance or such money shall become the property of said Pension Fund * * *. All actions of replevin for the return of any such personal property or money in the custody of said Superintendent and all other suits or actions of a similar nature arising by reason of his custody of said personal property or money shall be brought within three years from the date when the same came into the custody of said Superintendent or be forever barred; provided, however, that this sentence shall not be construed as implying that in the absence thereof said Superintendent would be subject to suit or action of any kind whatsoever and * * * that nothing herein shall be construed to waive the immunity from suit or action to which said Superintendent or said Department would be entitled in the absence of this sentence." Section 3 of Chapter 636 of the Acts of 1943 provided that the Act should be construed to apply to any and all lost or abandoned, unclaimed or stolen money and other personal property of any kind which has heretofore or may hereafter come into the possession of the Department. 1947 Supp., Art. 88B, sec. 18A footnote.

Section 306 of Article 27 provides that at any time on application to a judge of the criminal court the judge shall cause property wrongfully taken under a search warrant "to be restored to the person from whom it was taken." There is no similar provision for return of property rightfully taken under a search warrant but wrongfully withheld after there is no further need for retention by the police. A motion to quash a search warrant, under section 306, is not a substitute for an action of replevin or other appropriate proceeding for the determination of title to the property or money taken. *Bratburd v. State,* 193 Md. 352, 358, 66 A. 2d 792, 795; *Dail v. Price,* 184 Md. 140, 144, 40 A. 2d 334. It has been held that title to property seized under a search warrant cannot be determined in a summary proceeding without

64

process or notice to all parties in interest. *People ex rel. Robert Simpson Co. v. Kempner,* 208 N. Y. 16, 101 N. E. 794, 46 L. R. A., N. S., 970, Ann. Cas. 1914D, 169. We think the instant proceeding, by petition, in the criminal case which originated with the search warrant, and order to show cause to the police, the clerk of the court as temporary custodian and the county commissioners, was an appropriate proceeding, an equivalent of an action of replevin (if the money was still held in specie) or of trespass or trover for the determination of title (so far as necessary) or right of possession to the money. This conclusion is at least consistent with the provisions of Art. 88B, sec. 18A.

Of course, in such a proceeding as this (as the lower court said), "it is not sufficient for [the petitioner] to simply 'claim' the money." But, in the absence of special circumstances, the petitioner has not "the burden of establishing that the money *actually belonged* to her at the time it was seized", to the extent of tracing her title to its sources and disproving mere suspicion or possibility that she may be holding it, as a bailee or otherwise, for some one else. Under Art. 27, sec. 306, property wrongfully taken under a search warrant must be "restored to the person from whom it was taken." It would not seem, on principle or from technical considerations of property or possession, that the person from whom property is rightfully taken under a search warrant but wrongfully withheld should be required to prove more to qualify under Art. 88B, sec. 18A, as "the * * * person * * * entitled to any money * * * or to the possession of [other] personal property" in the custody of, or sold by, the police. Section 18A does create in the police, after three years, a possessory title to, and ownership of, money or proceeds of sale of other personal property. But mere seizure, rightful or wrongful, of money or other property by police ordinarily does not change title or right of possession to the property seized after the lawful purpose of the seizure has been served. Even if it is necessary to show title in

order to be "entitled", a bailee's title or interest may be enforced by ordinary actions at law; moreover, possession may be *prima facie* evidence of title. *Lemp Brewing Co. v. Mantz*, 120 Md. 176, 184, 87 A. 814. Against a mere wrongdoer, or an interloper without right or claim of his own, such as police, a right of possession, without proof of title, may be enforced in a great variety of circumstances, by various actions at law. *Armory v. Delamire*, 1 Strange 505; *Anderson v. Gouldberg*, 51 Minn. 294, 53 N. W. 636; *New England Box Co. v. C. & R. Const. Co.*, 313 Mass. 696, 49 N. E. 2d 121, 150 A. L. R. 152, and see collection of cases in a note to this case in 150 A. L. R. 163. Ordinarily, but not necessarily, a question of title becomes an issue in an action of replevin. A plaintiff in replevin may recover by proving right of possession without proving property. *Anderson v. Stewart*, 108 Md. 340, 349-350, 70 A. 228; *Poe on Pleading*, §§ 251, 252.

We think that it was sufficient for appellant to allege and prove she was rightfully (at least, without apparent wrong) in possession of the money and that it was immaterial whether she held it for some other person, in the absence of evidence that it had been stolen by the other person or otherwise obtained in violation of someone's rights or was legally subject to confiscation. The money should, therefore, be returned to her.

*Order reversed and case remanded for passage of an order in accordance with this opinion.*