[No. 38575. Department One. December 29, 1966.]

CHARLES M. THOMSEN et al., Respondents, v. THE STATE OF WASHINGTON et al., Defendants, KING COUNTY, Appellant.*

*Charles O. Carroll, James E. Kennedy,* and *William L. Paul, Jr.,* for appellant.

*Broz, Long & Mikkelborg, Lucas A. Powe, Jeremiah M. Long,* and *Douglas M. Fryer,* for respondents.

POYHONEN, J.†—This is a case where the owners of a blueberry farm and cannery gave a public agency an easement to use a 20-foot strip of land adjacent to a river bank for river improvement and flood control purposes and later found themselves virtually out of business. Understandably they want to be reimbursed for their loss.

*Reported in 422 P.2d 824.

†Judge Poyhonen is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

For clarity, a sketch of the property involved is shown.

The respondents purchased areas one, two, three, and four in 1922 from Cowley Investment Company, have been in posession at all times since, and from 1934 on have used the land for growing blueberries in commercial quantities. Area one includes the Sammamish River. Area four south and west of the curved dotted line is upland. The remainder of area four and all of areas two and three are second

class shorelands created when the level of Lake Washington was lowered some 50 years ago. Area three was surveyed out at one time as the Sammamish Waterway, but the waterway has never been dug.

Prior to conveying the above-described lands to the respondents, Cowley Investment Company had purchased

from the state of Washington all the shorelands in front of and adjacent to government lots three and four. The extent of the grant in the deed from the state to Cowley has been in dispute, and in the past both the respondents and the state of Washington have claimed title to areas one, two, and three. Respondents' ownership of the upland in area four is not denied.

Prior to July 1962, King County and the United States Corps of Engineers entered into a joint project for the improvement of the Sammamish River from its confluence with Lake Washington to its source in Lake Sammamish. The county was to provide title to the right of way and the corps of engineers was to contract for the actual work of widening, deepening, and diking the river.

The right of way for the project was surveyed to a width of 182 feet, being a strip 91 feet on either side of the center line of the river. King County then solicited from the numerous abutting owners river protection easements to the land included within the survey, and where these were granted the county also solicited releases and waivers of damages which permitted the cutting, filling, and flooding of the areas described in the easements. Where easements were not granted, the county condemned rights of way. In addition, the county acquired from the state of Washington a disclaimer of interest in damages "to the bed and shores" of the river.

On July 20, 1962, the respondents granted to King County a river protection easement which specifically covered an area 182 feet in width, 91 feet on each side of the center line of the Sammamish River. Measured on the ground, this easement permitted an encroachment upon respondents' lands to a distance 20 feet back from the south bank of the river. The respondents knew that they would have to move their blueberry bushes from this 20-foot strip if they wanted to save them. On the same day the respondents signed the release and waiver of damages document in the form solicited by the county for a recited consideration of $1 although no money was actually paid.

Some time later those in charge of the river improvement project designated areas two and three as disposal areas, and the land in areas one, two, and three was then flooded with river mud and debris to a depth of several feet, completely destroying blueberry production on 6.36 acres in areas two and three. This fill in areas two and three had a diking effect on the low part of area four, so there is some doubt whether the blueberry bushes in area four will survive. In addition, the respondents find themselves with a cannery located in area four which is now vastly "overbuilt" for what blueberry production they have left. The record is not entirely clear, but apparently someone had concluded that the ownership of areas one, two, and three was in the state of Washington, not in the respondents, and apparently further, that the state's disclaimer of interest in damages "to the bed and shores" of the Sammamish River, mentioned earlier, would be sufficient to protect the county against any liability for damaging areas two and three.

Respondents sued in count 1 to quiet title in themselves to areas one, two, and three against any claim of interest by the state of Washington and by King County, and in count 2 for damages against King County.

During the progress of the trial the state confessed judgment and consented to the entry of a decree quieting title to the disputed areas in the respondents. This decree was entered June 28, 1965. The effect of this decree was to establish ownership in the respondents, as against any claims of the state, back to 1922. The decree did not, and could not, foreclose any interest of King County, which was a party defendant and had not consented to its entry.

The trial court granted judgment in favor of the respondents and against King County for money damages for unlawful and unconstitutional damaging of private property. The county's appeal is limited solely to the issue of liability.

While the county does not attack the amount of the judgment, it may be helpful to an understanding of this opinion to analyze the trial court's award: No damages in area one,

and none were claimed; destruction of blueberry production in areas two and three, $9,570 at $1,500 per acre; no damages to blueberry bushes in area four; diminution in cannery value on area four, $14,500; loss of crop in 1963, $2,300; loss of crop in 1964, $8,200. It may be noted that the trial court was of the opinion that the damage to the blueberry farm was actually greater but was offset in part by the fact that the highest and best use of the land had, by reason of the fill, changed from blueberry farming to a higher and better use, residential development.

It is clear from the record that King County relied on the state of Washington to establish superior title to the areas in dispute. When the state stipulated to entry of a decree quieting title in the respondents, King County was caught completely off guard and requested a continuance to permit it to marshal its evidence in support of title. The continuance was granted.

When trial resumed, King County offered no evidence in support of title in itself to areas two and three. It offered no evidence, in addition to what had gone in earlier as part of the state's case, in support of the state's title prior to June 28, 1965. It did, however, offer to prove that the purported compromise settlement between the state and the respondents, which culminated in the consent decree of June 28, 1965, was not a compromise at all, but an outright, arms-length sale from the state to the respondents; that respondents had no title prior thereto; and that the damage had been done before the respondents owned the property. The trial court rejected the offer of proof.

The county's five assignments of error raise two issues: That the trial court erred (1) in rejecting the county's offer of proof and thereby deprived it of its day in court to prove title, and (2) in holding that the release and waiver of damages dated July 20, 1962, did not relieve the county of liability.

We have searched the record and are unable to find that the county was deprived of an opportunity to prove its own title. The county never introduced, or offered to introduce,

even a scintilla of evidence of any right, title, or interest in the county to areas two and three. Its only demonstrated interest in any of the lands is that which it acquired by reason of the river protection easement of July 20, 1962, but that by its terms was limited to area one, and respondents have never complained of what happened in that area. If the county claims any right, title, or interest in areas two and three, it has never made that fact known either to the respondents or the trial court.

What the county wants to prove is that the state had title prior to June 28, 1965, even though the state has consented to the entry of a decree quieting title in the respondents. The county is, in effect, attempting to make a collateral attack upon a formal judgment adjudicating that the respondents, not the state, are now and have been since 1922, the owners of the lands in question without making any showing that it has some claim or interest in the matters adjudicated in that judgment.

■ As against a wrongdoer, possession is title. The presumption of the law that the person who has the possession has the property may not be rebutted by evidence that the property was in a third person, when offered as a defense by one who claims no title and was a wrongdoer. *Cullen v. Bowen,* 36 Wash. 665, 79 Pac. 305 (1905). See also *Desimone v. Mutual Materials Co.,* 20 Wn.2d 434, 147 P.2d 945 (1944), where the factual situation was remarkably similar to that established by the evidence in the case now before us.

Quoting 52 Am. Jur. *Trespass* § 38, p. 865:

Ownership, together with a right of possession, is a defense to liability for a trespass. However, a plea of title in a third person may not be set up by a defendant who is not in privity of title with such third person. Similarly, since, as against one in possession, an intruder must justify his invasion by virtue of his own title, and not by the weakness of the plaintiff's title, the fact that the plaintiff's title was defective is not a defense to liability in trespass.

The rule is the same in trespass, inverse condemnation, and condemnation. *Yakima Cy. v. Tullar*, 3 Wash. Terr. 393 (1888); *Wendel v. Spokane Cy.*, 27 Wash. 121, 67 Pac 576 (1902); *Oklahoma City v. Hill*, 6 Okla. 114, 50 Pac. 242 (1897).

King County has shown no title to areas two and three. It has not shown any privity of title with the state of Washington. The trial court properly rejected the offer of proof.

The judgment must be affirmed, unless the release and waiver of damages of July 20, 1962, relieves the county of liability.

The release was signed on the same day that respondents gave the county the river protection easement for area one. It is not disputed that at that time the county contemplated nothing more than an encroachment upon respondents' lands 20 feet back from the river bank in area one and that the county's agent so told the respondents.

The testimony of the respondent husband stands undisputed that over a year later, on August 4, 1963, a Mr. Shamek from the King County engineers' office called at his home, and that:

> He was very sheepish at that time when he came in and said I have some bad news for you. . . . I really hate to do this. I am ashamed of myself, but they have changed the whole project of disposing of waste at the river there and they are *going to flood the whole outer field* . . . I guess it would be area three—and you have to move your blueberries off there or else they will be covered with mud.

This incident, occurring during the height of respondents' harvest season in 1963, immediately precipitated this lawsuit.

The release itself describes the lands as *"A portion of that portion* of the W. 840 ft. of Gov't Lot 3 and of the E. 250 ft. of Gov't Lot 4 in Sec. 12, Twp. 26 N., R. 4 E.W.M. . . . (Italics ours.)

The trial court found that the description in the release document is so vague as not to be subject to loca-

tion; that while government lot 3 is described, said lot does not include shorelands; that when the release was given both the respondents and the county contemplated that only area one would be affected by the project; and that the release was intended to protect the county from liability for damages in that area only which was described in the river protection easement of the same date. These findings are supported by substantial evidence and will not be disturbed.

The argument that a release of damages to a 20-foot strip along the river in area one saves the county from liability for damages in excess of $34,000 in areas two, three, and four is without merit.

The judgment is affirmed.

HILL, OTT, HUNTER, and HALE, JJ., concur.