727 P.2d 1153

**Lester GISSEL, Conrad Gissel and Dave Lewis, Plaintiffs-Respondents,**

v.

**STATE of Idaho, Defendant-Appellant.**

**No. 16107.**

Supreme Court of Idaho.

Sept. 26, 1986.

Rehearing Denied Nov. 21, 1986.

Jim Jones, Atty. Gen., Boise, and William A. McCurdy, Esq., of Quane, Smith, Howard & Hull, Boise, for defendant-appellant.

Thomas A. Mitchell, Coeur d'Alene, for plaintiffs-respondents.

DONALDSON, Chief Justice.

In 1979, officials from the Idaho Department of Fish & Game observed the respondents Lester and Conrad Gissel and Dave and John Lewis harvesting wild rice on land jointly owned by the state and the National Forest Service. After further observations, the department notified the county prosecutor who obtained a warrant to search Lester Gissel's residence. The search revealed 180 bags of wild rice weighing approximately 50 pounds each which the state seized. David Lewis and Lester and Conrad Gissel were subsequently charged and convicted of trespass. The case against John Lewis, a juvenile, was dismissed. The district court set aside the jury verdict against the respondents, but was reversed on appeal by the Idaho Court of Appeals. *State v. Gissel*, 105 Idaho 287, 668 P.2d 1018 (Ct.App.1983). On remand, the prosecutor dismissed the charges against the respondents.

Prior to the criminal trial, the respondents' attorney and the county prosecutor stipulated that the wild rice itself need not be entered into evidence and agreed to the sale of the rice in order to keep it from perishing. The rice was sold, although the record is inconsistent as to whether the sale price was $9,000 or $16,000.

On December 24, 1979, respondents filed a Notice of Claim to the wild rice or its proceeds against the State of Idaho. The state denied liability. On February 24, 1981, the respondents filed a complaint against the state alleging the state negligently seized and disposed of the rice and had failed to account to the respondents for the proceeds thereof.

A civil trial before Judge Prather was held on December 18, 1984. The court took judicial notice of the evidence adduced at the criminal trial and heard additional testimony and arguments. On March 8, 1985, the district court issued its Memorandum Opinion in which respondents were awarded one-half of the stipulated value of the rice ($10,500). Judgment was entered and the state's subsequent motion to amend the Memorandum Opinion, which constituted the court's findings of fact and conclusions of law and the judgment, was denied on June 4, 1985. The state now appeals.

The defendant-appellant, State of Idaho, raises two issues on appeal: (1) whether the district court erred in finding a factual basis for a 50/50 division of ownership of the wild rice between the State of Idaho and the United States Forest Service; and (2) whether the district court erred in holding that the plaintiffs-respondents the Gissels, were entitled to recover the proceeds of the sale of the wild rice they harvested from the U.S. Forest Service land.

I

■ The state argues that the district court's factual finding of a 50/50 division of ownership of the land from which the rice was gathered and, therefore, a 50/50 division of the proceeds of the sale of the rice, is not supported by the facts produced at trial. Factual findings of a trial court "will not be reversed unless the finding is clearly erroneous or not supported by substantial and competent evidence." I.R.C.P. 52(a). *Jensen v. Bledsoe*, 100 Idaho 84, 593 P.2d 988 (1979); *Courtright v. Robertson*, 99 Idaho 575, 586 P.2d 265 (1978); *Shrives v. Talbot*, 91 Idaho 338, 421 P.2d 133 (1966). Evidence produced at trial clearly indicates that the wild rice was gathered from land belonging to both the U.S. Forest Service and the State of Idaho. The Gissels testified that they knew the land where they gathered the rice belonged to the Forest Service and the State. Al Brunner, a former employee of the Department of Fish and Game, who worked in that area and had knowledge of the lands and its ownership, testified that he believed the rice was gathered from Forest Service land and state land in quantities amounting to the 50/50 split. Based on this evidence,

the district court concluded that the respective share of ownership was 50/50. The findings of the trial court are not clearly erroneous and are supported by substantial and competent evidence.

■ The trial court's acceptance of the stipulated valuation of the rice at $21,000 is also supported by substantial and competent testimony. The harvest produced 180 bags of rice, 50 pounds green weight, and when dried the weight was reduced to 25 pounds. The selling price was $5.15 a pound, which totals $23,175. Excluding costs, and other factors, the parties stipulated the value to be $21,000. The record presents no evidence to mistrust the $21,000 amount agreed by the parties. The fact that the amount received from the sale is disputed to be either $9,000 or 16,000 has no bearing upon the valuation of the rice for purposes of this appeal.[1]

The district court correctly held that the Gissels were entitled to recover only the amount of $10,500 attributable to National Forest Service land, since the other $10,500 was gathered from state land and rightfully belonged to the state.

## II

The second issue raised on appeal by the state is whether the district court erred in permitting the Gissels to recover from the state the value of the rice attributable to the National Forest Service land.

The district court found that the Gissels are entitled to recover from the state because it unlawfully converted part of the proceeds from the sale of the rice when it refused to account for the amount it received for the rice attributable to the U.S. Forest Service land. Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein, such as a tortious taking of another's chattel, or any wrongful exercise ... over another's goods, depriving him of the possession, per-

manently or for an indefinite time." *Klam v. Koppel*, 63 Idaho 171, 118 P.2d 729 (1941). Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the rights of another to control it that the actor may justly be required to pay the other the full value of the chattel. Restatement (Second) of Torts, § 222A, (1965). The state's refusal to account for the money received unlawfully interferred with the Gissels' possessory rights.

The state argues that it is not required to account for the proceeds of the sale as the Gissels could never have acquired any possessory right to entitle them to the proceeds. The state correctly points out that "one who steals or converts property to his own use does not thereby acquire title thereto." *Stewart v. People*, 193 Colo. 399, 566 P.2d 1069 (1977); *First National Bank and Trust Company of Lincoln v. Ohio Casualty Insurance Company*, 196 Neb. 595, 244 N.W.2d 209 (1976); *Northern Insurance Company of New York v. Miller*, 129 N.W.2d 28 (Iowa 1964). But these cases are not controlling here. In each of the cited cases, the parties alleging the conversion were the true owners or assignees. Therefore, it was held that the thief or the party who had converted the property to his own use or someone who had acquired property from the thief or converter of the property, could not gain title or retain possession of the property as against the true owner, and in each case the property was returned to the true owner or assignee.

By contrast, in the case at bar, the Gissels do not seek the return of property which rightfully belonged to the state—but only that portion which belonged to the Forest Service. The Gissels, as prior possessors, have a superior right as against the state to possession of the proceeds attributable to Forest Service land. In Restatement (Second) of Torts § 895, (1965), it

1. When the Gissels were tried for criminal trespass in 1979, the rice was sold by agreement of the parties to prevent the loss of the rice. *See State v. Gissel*, 105 Idaho 287, 668 P.2d 1018

(Ct.App.1983). The decrease in the valuation can probably be attributed to some loss due to spoilage or some other factor which affected the amount of rice actually sold.

states, "One who is otherwise liable to another for harm to or interference with land or chattel is not relieved of the liability because a third person has a legally protected interest in the land or chattel superior to that of the other." *See also, Thomsen v. State*, 70 Wash.2d 92, 422 P.2d 824 (1966). Mere possession alone is sufficient to sustain a trespassor's cause of action for conversion against all but the true owner. *New England Box Co. v. C & R Const. Co.*, 313 Mass. 696, 49 N.E.2d 121 (1943); *Welke v. Davenport*, 309 N.W.2d 450 (Iowa 1981); *Associates Discount Corporation v. Gillineau*, 322 Mass. 490, 78 N.E.2d 192 (1948); *Adams v. Queen Insurance Company of America*, 88 So.2d 331 (Ala.1956); *Novak v. State*, 195 Md. 56, 72 A.2d 723 (1950). *See also, Northern Pac. R. Co. v. Lewis, et al.*, 162 U.S. 366, 16 S.Ct. 831, 40 L.Ed. 1002 (1896).

■ The Gissels trespassed upon land belonging to the state and the U.S. government. Idaho Fish and Game officers seized the rice with a valid search warrant when the Gissels were arrested for trespassing. The state, under stipulation of both parties, then sold the rice and retained possession of the share attributable to U.S. land. This share of the proceeds belongs to the U.S. government and not to the state. The failure of the state to account for the proceeds of the sale constitutes a conversion by the state. The Gissels, though trespassors and without legal title, which title rests with the Forest Service, still by mere possession have greater rights superior to that of the state, and the Gissels are, therefore, entitled to recover that share of the money, $10,500, which belongs to the Forest Service.

■ The state has brought to the attention of this Court the statutory provisions regarding the disposal of property stolen or embezzled and not claimed by the owner. I.C. § 19–3805. As previously discussed,

the owner of the lands and the rice gathered from those lands belongs to the State *and* the Forest Service. However, the Forest Service never put in a claim for the rice grown on its land, and the Gissels were never convicted of stealing or embezzling the rice. The Gissels made a timely claim for the return of the proceeds of the sale from the Forest Service lands and, the State cannot rely upon I.C. § 19–3801 through I.C. § 19–3805 to justify its actions in not accounting for the proceeds of the sale and returning that share which, for the purposes of this appeal, belongs to the Gissels.[2]

The state's second argument is based upon the theory that it was acting as an agent for the Forest Service and was thereby authorized to sell the rice and retain possession of the proceeds for the benefit of the Forest Service.

Agency is a fiduciary relationship in which the principal confers authority upon the agent to act for the principal. Restatement (Second) of Agency § 1 & 7 (1957). Agency can be established in three ways. First, real authority—an expression by the principal, either written or oral, granting authority to the agent to act, *Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972); *Thornton v. Budge*, 74 Idaho 103, 257 P.2d 238 (1953); *Gorton v. Doty*, 57 Idaho 792, 69 P.2d 136 (1937). Second, implied authority—the principal acts in such a manner which leads the agent to believe that he has authority to act for the principal. *Adkinson Corp. v. American Bldg. Co.*, 107 Idaho 406, 690 P.2d 341 (1984); *State v. DeBaca*, 82 N.M. 727, 487 P.2d 155 (1971). Third, apparent authority—acts by the principal involving third parties who are conversant with the business practices of the principal, whereby a reasonable person would be lead to believe that the agent has authority to act for the principal. *Clements v. Jungert*, 90 Idaho 143, 408 P.2d 810 (1965); *Commercial Insurance Co. v.*

---

2. The statute requires the owner to make claim for the return of the property or in this case their possession within six months or the possession will be forfeited to the county treasury. The trespass and seizure by the Fish and Game officials occurred in September of 1979. (The date of the complaint was September 5, 1979.) The Gissels filed a Notice of Claim on December 24, 1979. Hence, the claim was filed within the six-month period.

*Hartwell Excavating Co.*, 89 Idaho 531, 407 P.2d 312 (1965); *Anderson v. Smith Frozen Foods of Idaho, Inc.*, 83 Idaho 494, 365 P.2d 965 (1961).

The party alleging the existence of an agency relationship carries the burden of proof. *Transamerica Leasing Corp. v. Van's Realty Co.*, 91 Idaho 510, 427 P.2d 284 (1967); *Hayward v. Yost*, 72 Idaho 415, 242 P.2d 971 (1952). "Where the existence of an agency relationship is disputed, it is a question for the trier of fact to resolve from the evidence." *Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972).

The state points to a document which it alleges supports its position that an agency relationship existed. That document is a Memorandum of Understanding between the Idaho Department of Fish and Game and the Forest Service. The memorandum does not contain any express references conferring authority upon the state indicating an agency relationship. Nor is there any evidence of actions between the Forest Service and the state which could lead to an inference that the state had implied authority to act for the Forest Service. And finally, the record does not show any activities by the Forest Service which would indicate to the Gissels that the state was acting as an agent for the Forest Service. The memorandum only outlines policies of cooperation between the Forest Service and the Department of Fish and Game. It does not expressly or inferentially confer any authority upon the state to act as an agent.

The final piece of evidence upon which the state relies to support its agency argument is a signed stipulation between the state and the Gissels. The stipulation states, "2. The U.S. Forest Service, claiming an interest in approximately one-half of the wild rice, *refuses to release its interest to other than the Idaho Department of Fish and Game.*" (Emphasis added.) Stipulation and Order, at 1, (Tr. on Appeal, Vol. 1, at 14–15, Supreme Court No. 13921), *State of Idaho v. Gissel*, Nos. M26354, M26357, M26356, M26355, (1st D. Idaho, October 2, 1979), *reprinted in Gissel v. State,* Supreme Court No. 16107. The stipulation merely states that the Forest Service would not release its claim to anyone but the state; it does not confer any authority, real or implied, upon the state to act for the Forest Service. The state has failed to meet the burden of showing the existence of an agency relationship and the record supports the district court's finding that no agency relationship existed. The district court heard the evidence, assessed the reliability and the weight of the witnesses' testimony, and found that the state was not the agent of the Forest Service. We, therefore, affirm the district court's decision.

Costs to respondent.

No attorney fees on appeal.

BISTLINE J., concurs.

SHEPARD and HUNTLEY, JJ., concur in result.

BAKES, Justice, dissenting:

Respondent Gissel trespassed upon land owned by the State of Idaho and land owned by the United States Forest Service and harvested wild rice off this land. The land in question was "jointly" managed by the Idaho Fish & Game Department and the United States Forest Service for wildlife management purposes. The rice was raised as cover habitat and feed for migratory water fowl. The defendant was a former employee of the Fish & Game Department who knew the purpose that the wild rice served. Defendant trespassed on the land and harvested the rice without any claim to or interest in the rice. The state, upon discovering the taking, had the rice seized pursuant to a valid search warrant. The respondent was charged with trespass and taking produce and was convicted in the magistrate court. On appeal, the district court set aside the jury verdict against the respondent upon the grounds of insufficient evidence. However, the district court's reversal was itself reversed on appeal by the Idaho Court of Appeals. *State v. Gissel*, 105 Idaho 287, 668 P.2d 1108 (Ct.App.1983). Nevertheless, on remand

the prosecutor apparently did not desire to pursue the case further, and the charges against the respondent were dropped. Because the rice was perishable, it had been sold soon after it was seized.

Gissel now brings an action for the tort of conversion for one-half the value of the sold rice, claiming status as a prior possessor of the rice and asserting superior rights against the State of Idaho in that portion of the rice harvested from the U.S. Forest Service land. Accepting the fact that 50% of the crop was grown on United States Forest Service land, the issue in this case is whether one who has admittedly trespassed and taken wild rice which does not belong to him can maintain an action for conversion based on an alleged status as a prior possessor. The wild rice was not abandoned, lost or mislaid property, which would implicate certain rules of law.[1] Rather, it was wrongfully taken from the owners.

As the majority opinion correctly points out, conversion is "any distinct act of dominion *wrongfully* exerted over another's personal property in denial or inconsistent with his rights therein, such as the tortious taking of another's chattels, or any wrongful exercise ... over another's goods, depriving him of possession, permanently or for an indefinite time." *Klam v. Koppel*, 63 Idaho 171, 118 P.2d 729 (1941) (emphasis added). In order to constitute conversion, the "act of dominion" exerted over another's property must be "wrongful," and it must be "inconsistent with his [the claimant's] rights." In this case the state's taking of possession was not "wrongful"; rather, it was legally taken pursuant to a valid search warrant. Furthermore, the taking pursuant to the valid search warrant was not "inconsistent with his rights therein," because, as the following authorities demonstrate, Gissel has no "rights" in the wild rice.

Gissel claims the proceeds to the rice based solely on a prior possession theory. As the majority opinion correctly notes, Gissel was a trespasser who had no title or claim to title. The district court, characterizing Gissel's conduct as analogous to a "thief" at common law, erroneously accepted Gissel's argument by ruling that "[t]he possessory title of the thief is good against all the world except the true owner or somebody acting on behalf of the true owner as their agent or assignee." This assertion is not supported by any legal citation. Prosser, in discussing a "thief's" interest in allegedly converted property, states: "[N]o court has ever allowed an admitted ... thief without claim of right to recover and it seems improbable that one ever will." Prosser & Keeton, Law of Torts, § 15, p. 103 (1984).

Keeping in mind that Gissel's claim, as the trial court described it, rests solely on a claim of prior possession by a "thief,"

"[T]he essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession. A party claiming a conversion must show (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof." *Kunde v. Biddle*, 41 Ill.App.3d 223, 353 N.E.2d 410, 412 (1976). (Citation omitted.)

Gissel cannot meet these elements.

First, the state legally came into possession of the rice pursuant to a valid search warrant. Accordingly, there was no "un-

---

1. Even if the concept of prior possessor, as borrowed from "abandoned and lost property" law, could be logically applied to theft situations where the property owner is known, the law imposes an obligation upon the finder (Gissel) of lost goods who takes goods into possession to use due care in keeping the goods and requires the finder to *deliver* the goods to the owner upon demand. *Waugh v. University of Hawaii,* 63 Hawaii 117, 621 P.2d 957, 969 (Hawaii 1980); 36A C.J.S. *Finding Lost Goods* § 7 (1961) (duties and liabilities of finder to owner). If the state owes $10,500 to Gissel, Gissel then owes that money to the United States Forest Service and is under an immediate duty to deliver. However, as the record reflects, the U.S. Forest Service has released its interest to the State of Idaho, as discussed hereinafter.

*authorized and wrongful* assumption of control, dominion, or ownership [by the state] over the personalty of another." (Emphasis added.)

The second element also is not met by Gissel. The only claim that Gissel can demonstrate in the rice is that of one who "knowingly" and "wrongfully" took property which did not belong to him. Gissel's tenuous claim to the rice rests only on the status of prior possession by a "thief." When the rice was taken from Gissel pursuant to the valid search warrant, Gissel lawfully lost possession, which was his only claim to the property. Neither Gissel, the district court, nor the majority opinion herein point out at what point in time the state's alleged act of conversion took place. No conversion could have occurred when possession was taken from Gissel because that taking was pursuant to a valid search warrant, and therefore was not "an *unauthorized* and *wrongful* assumption of control, dominion or ownership...." *Klam v. Koppel,* 63 Idaho 171, 118 P.2d 729 (1941). The subsequent disposition of the perishable property to prevent spoiling could not have been a conversion against Gissel because, at that time, he had neither possession nor any legal claim to the rice. Accordingly, Gissel cannot meet the second requirement.[2]

Third, Gissel cannot demonstrate any right to immediate possession of the rice. One must be entitled to immediate possession of a chattel before he can successfully contend that the actor's failure to yield possession constitutes "conversion." *Artman v. Ray,* 263 Or. 529, 501 P.2d 63 (1972). Gissel has not demonstrated a right to immediate possession of the rice.

A "thief" is not entitled to bring an action for conversion. "It is elementary that one who steals or converts property to his own use does not thereby acquire title thereto." *Stewart v. People,* 193 Colo. 399, 566 P.2d 1069, 1070 (1977). The California case of *Suttori v. Peckham,* 48 Cal.App. 88, 191 P. 960 (1917), is on point. In that case, the plaintiff Suttori was captain of a fishing boat operating off the California coast. The plaintiff was arrested at sea by a deputy sheriff for fishing with a net within three miles of the coastline, in contravention of a California statute which prohibited this. The defendant Peckham was the magistrate who charged Suttori and who ordered the fish seized during the arrest and distributed to the poor. When the charges were later dropped, Suttori brought suit claiming conversion. At the subsequent civil trial, Suttori lost and an appeal followed.

The appeals court affirmed the district court, holding that during the trial there was sufficient evidence produced to prove that Suttori had taken the fish within the three mile limit. The court stated:

"This fact was sufficient to justify the court in finding that the plaintiff was not the owner nor entitled to the possession of the fish, if the taking of the fish with a net and within three miles of that island was prohibited by law and was a criminal act." 191 P. at 961.

The court went on to conclude that:

"It should need no citation of authorities to establish the proposition that no person can acquire title or right of possession to property of the state by the act of taking possession thereof illegally. But the plaintiff cannot maintain this action if at the time of the alleged conversion he had neither ownership nor right of possession in the goods alleged to have been converted. *Hilmer v. Hills,* 138 Cal. 134, 70 P. 1080." 191 P. at 961.

---

2. The case law overwhelmingly holds that, in order to successfully prosecute a conversion action, the plaintiff must establish his title or right of immediate possession to the property allegedly converted. *McKibben v. Mohawk Oil Co., Ltd.,* 667 P.2d 1223 (Alaska 1983); *Pierce v. Ackerman,* 488 P.2d 1118 (Colo.App.1971); *Artman v. Ray,* 263 Or. 529, 501 P.2d 63, *rehearing*

*den.,* clarified 263 Or. 529, 502 P.2d 1376 (1972); *Bloedel Timberlands Development, Inc. v. Timber Industries, Inc.,* 28 Wash.App. 669, 626 P.2d 30 (1981); *Champion Ventures, Inc. v. Dunn,* 567 P.2d 724, appeal after remand 593 P.2d 832 (Wyo.1977). Creating a property interest in Gissel, in effect, would create a property interest in a thief valid against all but the true owner.

It is clear that neither theft nor illegal taking of property can give rise to the type of "property right" required to maintain an action for the tort of conversion. *See also Covington v. Lewis et al.,* 83 Cal.App. 8, 256 P. 277, 278 (1927) (citing *Suttori* and holding that a plaintiff cannot maintain an action for conversion unless he is entitled to possession). The rule adopted by *Suttori* extends back through the years when, in 1859, a Georgia court held that a plaintiff cannot maintain a conversion action on the strength of a fraudulent or void title. *Mulligan v. Baily,* 28 Ga. 507, 510 (1859).

Finally, Gissel did not make out any claim of right to the rice, but only a claim of a "thief." The rule of law is that Gissel must recover on the strength of his own title, without regard to the weakness of that of his adversary. *Denver Livestock Com. Co. v. Lee,* 18 F.2d 11 (8th Cir.1927), *rehearing denied* 20 F.2d 531 (8th Cir. 1927); *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.,* 157 Ill. 554, 41 N.E. 888 (1895); *Baker v. Seavey,* 163 Mass. 522, 40 N.E. 863 (Mass.1895);

*Dorrell v. Clark,* 90 Mont. 585, 4 P.2d 712 (1931); *Sussman v. Mentzer,* 76 P.2d 595 (Wash.1938); *Lee On v. Long,* 37 Cal.2d 499, 234 P.2d 9 (1951); *Malchow v. Boise Cascade Corp.,* 20 Wash.App. 258, 578 P.2d 1337 (Wash.App.1978). The majority opinion comes to its conclusion based on what it sees as a weakness in the state's claim to the rice, not based on Gissel's ability to bring a *prima facie* case of conversion. Gissel has no claim of right,[3] and as discussed above cannot meet the elements required of a plaintiff in a conversion action.

Since Gissel's claim of prior possession rests solely on the asportation of the wild rice, neither policy nor concepts of justice support such a claim under these facts. First, the policy behind protecting prior possessors is to ensure the ultimate protection of the true owner's interest. *Waugh v. University of Hawaii, supra.*[4] Protection of Gissel does not protect the U.S. Forest Service interest in wildlife management, but only protects the interest of Gissel.

**3.** Alternatively, along this line of argument, several cases support the proposition that "in an action for conversion, proof of title or right of possession in a third person is a good defense." *Reynolds v. Fitzpatrick,* 72 P. 510 (Mont.1903). *See also Glen Arms Associates v. Century Mortgage & Investment Corp.,* 680 P.2d 1315 (Colo.App.1984); *Krewson v. Purdom,* 11 P. 281 (Or.1886), holding that a defendant may refuse to return property to a plaintiff claiming conversion if refusal is made in good faith and in recognition of the rights of the party to whom the property lawfully belongs. The record in this case demonstrates that the wild rice belongs to the U.S. Forest Service and that it was stipulated (as discussed hereinafter) that the Forest Service agreed to release the rice only to the State of Idaho. Under such circumstances, the state has a valid defense to Gissel's claim if the district court's assertion—that a "thief" has good title against all the world except the true owners—is upheld. If the state had given the rice to Gissel on demand, it would have done so in contravention of the U.S. Forest Service's rights in the rice.

**4.** According to Prosser, the policy behind protecting a prior possessor is wavering and should be limited. Prosser states:

"The original justification for this lay in the convenience of treating the possessor as the owner, and the encouragement to peace and

security expected to result from the protection of any possession against a wrongdoer with no rights at all. Modern law has discovered new reasons of business convenience for permitting the possessor to maintain the action, and recover the full value of the chattel. It is said that the possession is a sufficient title against the wrongdoer, because the man in possession is, of the two, the proper party to account to the true owner for the amount recovered, and to adjust with him any question as to their respective rights. But, since a full recovery by one in possession will bar any subsequent action by the true owner, *the disadvantages are obvious. Such a rule may result in considerable hardship where the possessor mishandles the suit, or is not to be trusted with the proceeds.* For these reasons it has been suggested that the possessor's right to recover more than the value of his own interest in the chattel *should be limited to cases where he has the express or implied consent of the owner to bring the action,* or the owner cannot be found; and that the proper procedure when the question of the jus tertii raises is for the court, of its own motion, to stay proceedings until the owner can be notified, and permitted to decide whether he wishes to intervene in the action, or take other measures of his own." Prosser & Keeton, Law of Torts, at 103–104 (1984). (Emphasis added, citations omitted.)

The district court and the majority side-step defendant's Exhibit "B", which is a memorandum of understanding between the Fish & Game Department and the Forest Service, and Stipulation No. 2, which states:

"2. The U.S. Forest Service, claiming an interest in approximately one-half of the wild rice, *refuses to release its interest to other than the Idaho Department of Fish and Game.*" (Emphasis added.)

These documents demonstrate, if nothing else, where the interests of the true owner, the Forest Service, lie, and that is with the state and not with Gissel. To protect Gissel is to condone the actions of a "thief." The law should not reward theft.