**UNITED STATES of America**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE et al. (three cases).**

**Civ. Nos. T–74–990, 973 and 871.**

United States District Court,
D. Maryland.

June 1, 1976.

Jervis S. Finney, U. S. Atty., and Gerard P. Martin, Asst. U. S. Atty., Baltimore, Md., and V. James Ferraro, Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Benjamin L. Brown, City Sol. and Andrew J. Graham, Asst. City Sol., Baltimore, Md., for the Mayor and City Council of Baltimore and the Director of Finance.

Francis B. Burch, Atty. Gen. of Maryland, and Millard S. Rubenstein, Asst. Atty. Gen., Baltimore, Md., for the Police Commissioner and individual police officers.

THOMSEN, Senior District Judge.

These consolidated civil actions were brought by the United States to enforce levies served upon agents of the Mayor and City Council of Baltimore (the City),[1] pursuant to § 6331(a) of the Internal Revenue Code, as amended, claiming that at the time the levies were served defendants had in their possession money belonging to persons who owed wagering taxes to the United States, which they were required by § 6332 to surrender to the United States.[2] The City claims that the money had previously been forfeited to the City pursuant to Md.

---

1. The Police Commissioner of Baltimore City was appointed by the Governor of the State, but is paid by the City, and is an agent of the City for the purposes of these cases, as are the police officers who are defendants in the several cases. See 1969 Public Local Laws of Baltimore City, § 16–5. An amendment to that law, approved May 24, 1976, does not affect these cases.

2. IRC § 6331. Levy and distraint

"(a) *Authority of Secretary or delegate.*—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * * If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section."

IRC § 6332. Surrender of property subject to levy

"(a) *Requirement.*—Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect to) property, or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

"* * *

"(c) *Enforcement of levy.*—

"(1) *Extent of personal liability.*—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary or his delegate, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for collection of which such levy has been made, together with costs and interest on such sum at the rate of 6 percent per annum from the date of such levy. Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

"(2) *Penalty for violation.*—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

"* * *

"(e) *Person defined.*—The term 'person,' as used in subsection (a), includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to surrender the property or rights to property, or to discharge the obligation."

Ann.Code, Art. 27, § 264(a)–(d).[3] The facts are not in dispute.

## Facts

### (1) Hawkins

On October 17, 1972, James Lawrence Hawkins was arrested at 2819 Parkwood Avenue, in the City, pursuant to a search and seizure warrant for the search of the premises and the arrest of Hawkins. On the same day he was charged with lottery violations. At the time of the arrest, City police officers seized $4,156.00 from the premises as contraband. The seizure of the $4,156.00 was effected pursuant to Art. 27, § 264 (see note 3), and the money has been held by one or more of the individual defendants herein as agents for the City ever since it was seized. On November 17, 1972, Hawkins was tried with others in an appropriate state court, and was found guilty of violation of Md.Ann.Code, Art. 27, §§ 356–371 (Lotteries).

On November 20, 1972, a delegate of the Secretary of the Treasury of the United States made an assessment in accordance with law against Hawkins for wagering taxes in the amount of $3,730.67 for the taxable periods September and October, 1972. On the same day Hawkins was given notice and demand for payment of said taxes in accordance with law, notice of a federal tax lien was duly recorded with the Clerk of the Superior Court of Baltimore

---

3. Art. 27, § 264. Cash seized in gambling operations in Baltimore City and certain counties.

"(a) *Deemed contraband.*—Whenever any money, currency or cash shall be seized or captured by any police officer in Baltimore City, Allegany, Anne Arundel, Calvert, Carroll, Cecil, Garrett, Harford, Howard, Kent, St. Mary's, Washington and Wicomico counties in connection with any arrest for the playing or operation of any bookmaking, betting and wagering on horses or athletic events, or any lottery, game, table, or gaming device unlawful under the provisions of this article, all such money, currency or cash shall be deemed prima facie to be contraband of law as a gambling device or as a part of a gambling operation. No such money, currency or cash shall be returned to any person claiming the same, or to any other person, except in the manner hereinafter in this section provided.

"(b) *Deposited pending trial.*—Pending trial or ultimate disposition of the charge or charges, indictment or indictments, growing out of any arrest in connection with which any such money, currency or cash may have been so seized or captured, the same shall be deposited with, and accounted for by the county treasurer of the county or the director of finance in Baltimore City.

"(c) *Forfeiture upon conviction.*—If the trial or other ultimate disposition of such charge or charges, indictment or indictments, results in a record of conviction being entered against the person or persons so arrested, in connection with which the said money, currency, or cash may have been so seized or captured, the county treasurer of the county or director of finance in Baltimore City may after one month from the date of the record of the entry of such conviction, unless the case is appealed to Court of Appeals make application to the circuit court of the county, for an order declaring and ordering that such money, currency or cash in

the custody of the director of finance or county treasurer shall be forfeited to the sole use and gain of the said county or city. The court to which any such application has been directed shall establish to its satisfaction that there is no pending and undetermined suit or proceeding which has been filed in any court of competent jurisdiction, against said director of finance or treasurer, seeking a return or recovery of the said money, currency or cash so held in custody, before said court shall proceed so to order a forfeiture of such money, currency or cash to the county.

"(d) *Disposition upon acquittal.*—If the trial or other ultimate disposition of such charge or charges, indictment or indictments, results in an acquittal or other final determination of such proceedings in favor of the person or persons so arrested, in connection with which the said money, currency or cash may have been so seized or captured, the same shall be returned to the person from whom taken on the expiration of ninety days from such acquittal or other final determination, unless some other person or persons claiming to own any or all of the said money, currency, or cash shall have, within ninety days from the date of the record of the entry of such acquittal or other final determination, applied to the circuit court of the county, for an order declaring and ordering that such money, currency or cash in the custody of the director of finance or county treasurer is the property of the person or persons so applying and should be returned to him or them forthwith by the said director of finance or treasurer. In the event some other person or persons so apply, the court shall hear and determine the issue as in other cases at law."

Section 264 was amended by ch. 666 of the Acts of 1974 and ch. 219 of the Acts of 1975. Those amendments do not control this case.

City,[4] a filing fee of $6.00 was paid and a notice of levy was given to defendants herein. Hawkins has failed to pay that assessment and now owes the United States $3,736.67, plus interest.

On December 14, 1972, Hawkins filed a petition in an appropriate state court for the return of the $4,156.00. The City answered the petition and moved for forfeiture of the contraband. On February 14, 1973, a motion for summary judgment filed by Hawkins was denied, and on March 7, 1973, a final order of forfeiture pursuant to Art. 27, § 264, was entered forfeiting the contraband absolutely. The United States was not a party to that proceeding. The present action with respect to Hawkins was filed in this court on September 13, 1974.

### (2) Cork

On December 5, 1972, pursuant to a search and seizure warrant for 2810 Washington Boulevard, in the City, and for the arrest of Richard Alfred Cork, $6,730 was seized by City police officers pursuant to Art. 27, § 264. The money has been held by one or more of the individual defendants herein, as agents for the City, ever since it was seized. Cork's trial was postponed several times but on May 2, 1973, he entered a plea of guilty and was adjudged guilty of the charge of lottery and bookmaking. Meanwhile, on December 22, 1972, Cork had caused attorneys to file in the name of his mother a petition for the return of the $6,730, but that petition was dismissed by the attorneys "without prejudice" on April 10, 1973.

On January 15, 1973, a delegate of the Secretary of the Treasury of the United States made a jeopardy assessment in accordance with law against Cork for wagering taxes in the amount of $6,786.82 for the taxable periods November 1972 and December 1972. On the same day Cork was given notice and demand for payment of said taxes in accordance with law; on the next day, January 16, 1973, a notice of levy was given to defendants herein; and on January 17, 1973, notice of a federal tax lien was duly recorded with the Clerk of the Superior Court of Baltimore City upon payment of a filing fee of $6.00. Cork has failed to pay that assessment and now owes the United States the amount of $7,228.28, plus interest.[5]

On September 24, 1973, the City sought absolute forfeiture of the $6,730 in an appropriate state court. Cork's mother intervened, but the court, after hearing testimony, forfeited the $6,730 absolutely to the City. Cork's mother appealed to the Court of Special Appeals, which affirmed the judgment. The United States was not a party to that proceeding.

### (3) Hensley

(a) On May 31, 1973, Frank E. Hensley was arrested in the City and charged with bookmaking in violation of Art. 27, §§ 356–371. At the time and place of the arrest, $276 was seized by City police officers, pursuant to Art. 27, § 624, and the money has been held by one or more of the individual defendants herein, as agents for the Director of Finance of the City, ever since it was seized. Hensley was tried in a state court on June 13, 1973, and was adjudged guilty of violating Art. 27, §§ 356–371.

The City filed a petition in an appropriate state court on November 16, 1973, for absolute forfeiture of the money, and on January 16, 1974, an order of forfeiture was entered.

(b) Hensley was again arrested in the City on June 15, 1973, and charged with possession of flash paper and bookmaking violations. At the time and place of the arrest, City police officers seized $1,064 and the money has been held by one or more of the individual defendants herein, as agents for the Director of Finance of the City, ever since it was seized. Hensley was tried on June 22, 1973, and adjudged guilty of the use of flash paper, in violation of Baltimore

---

4. The place for filing the notice of lien was fixed by IRC § 6323(f)(1)(A)(ii) and Md.Ann. Code, Art. 21, § 3–401(b)(2).

5. This figure is stipulated.

City Code, Art. 19, § 7 (1966), but not guilty of bookmaking.

On December 7, 1973, the City filed in an appropriate state court a petition seeking absolute forfeiture. The last possessor, Hensley, failed to appear and forfeiture absolute was ordered on January 29, 1974. The United States was not a party to that proceeding.

(a, b) On August 1, 1973, a delegate of the Secretary of the Treasury of the United States had made an assessment in accordance with law against Hensley for wagering taxes in the amount of $2,600 for the taxable period ending June, 1973. On the same day Hensley was given notice and demand for payment of said taxes, in accordance with law. Notice of a federal tax lien was duly recorded with the Clerk of the Superior Court on August 3, 1973, upon payment of a filing fee of $6.00, and a notice of levy was given to defendants herein. Hensley has failed to pay the assessment and now owes the United States the amount of $2,606, plus interest. The present action with respect to Hensley was filed in this court on August 13, 1974.

### All Cases

The notices of levy served on defendants, as set out above, informed them of the several amounts that were then due, owing and unpaid to the United States from Hawkins, Cork and Hensley, respectively, that demand had been made for such payments upon Hawkins, Cork and Hensley, each of whom had refused or neglected to pay; that all property and rights to property belonging to the said Hawkins, Cork and Hensley then in the possession of the defendants were thereby levied upon and seized in satisfaction of the respective liabilities, together with all additions as pro-

vided by law, and that demand was made upon the defendants for payment of such amounts, to an extent equal to the property or rights to property belonging to Hawkins, Cork and Hensley, respectively, then in the possession of defendants. Defendants have refused and continue to refuse to surrender to the United States the amounts so claimed.

### Discussion

The issue in each of these cases whether the sums of money seized from Hawkins, Cork and Hensley, all of which sums are still in the hands of an agent of the City, were at the time when the several notices of levy were served on defendants by the Internal Revenue Service, still the property of Hawkins, Cork and Hensley, or had become the property of the City, pursuant to Md.Ann.Code, Art. 27, § 264. See note 3, above.

■ Although federal law governs the issue of the priority of liens, applicable state law determines the nature of the interest, if any, which the taxpayers (Hawkins, Cork and Hensley) had, at any given time, in the moneys seized by the police officers. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

No case directly in point has been decided by the Court of Appeals of Maryland. However, in *Gatewood v. State,* 264 Md. 301, 285 A.2d 623 (1972), that court held that absolute forfeiture of money seized in a gambling raid could not be ordered in the criminal proceeding, but that Art. 27, § 264, requires a separate civil proceeding for that purpose. See also *Prince George's County v. Blue Bird Cab Company,* 263 Md. 655, 284 A.2d 203 (1971), and *State v. Greer,* 263 Md. 692, 284 A.2d 233 (1971).[6]

---

**6.** A decision of the Court of Appeals, *Novak v. State,* 195 Md. 56, 72 A.2d 723 (1949), may have precipitated Art. 27, § 264, which was first passed in 1951. In *Novak,* a person not a party to a gambling case filed a petition for the return of money of which she claimed to be the owner and which had been seized by the State Police under a search warrant, with an order thereon to show cause to the police, the clerk

of the court, as temporary custodian, and the county commissioners. The Court of Appeals held that this "was an appropriate proceeding, an equivalent of an action of replevin (if the money was still held in specie) or of trespass or trover for the determination of title (so far as necessary) or right of possession to the money" (id. at 64, 72 A.2d at 726), and concluded:

Several cases involving a statute strikingly similar in many but not all respects to Art. 27, § 264 of the Maryland Code have arisen in New Jersey.[7] In *Spagnuolo v. Bonnet,* 16 N.J. 546, 109 A.2d 623 (1954), the Supreme Court of New Jersey held that a judgment of condemnation or forfeiture under the New Jersey statute "relates back to the commission of the wrongful act and takes date from the wrongful acts, not from the date of sentence or decree  *  * The forfeiture is considered as directed against the thing itself, not merely the possessor's interest in it." 109 A.2d at 630.[8] The Court continued:

"Therefore, we must conclude that at the time the jeopardy assessment was attempted to be levied against the particular monies in this case, seized under the circumstances in which they were, title to the property was then in the County of Essex. At most the federal lien could only attach to Edward Spagnuolo's inchoate right to sue for the return of the funds in the event of his acquittal and not to the confiscated funds themselves. The federal lien can rise no higher than the rights of the taxpayer.  *  *  *

"The title and possession of the County of Essex was not that of a creditor or a judgment creditor but a title and possession acquired by an exercise of sovereign power, and therefore the case of *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), is not in point." Id. at 631.

Several years later, in *United States v. Bleasby,* 153 F.Supp. 724 (D.N.J.1957), the district judge refused to follow *Spagnuolo.* He concluded that the principle upon which *Spagnuolo* was decided had been "rejected by the Supreme Court of the United States in a line of cases in which the issue before the Court was the relative priority of the federal tax lien and the statutory lien established by local law", citing *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), and other cases. Id. at 728. On appeal the Third Circuit reversed, stating inter alia:

"The Supreme Court has gone very far in sustaining the priority of United States tax liens over antecedent liens under state law, where it has been possible to view the state lien as still 'inchoate' when the tax lien was perfected. (citations omitted). However, this case presents the special and unusual situation of the United States attempting to attach a tax lien to property actually in possession of the state after its seizure as contraband subject to forfeiture to the state. True, after seizure it still remained for the state to pursue the prescribed procedure for obtaining a formal decree of forfeiture. But this does not alter the fact that the United States has tried to impose a lien on property after it has passed into the actual possession of another government under sovereign claim of right to keep it in furtherance of the policy of its criminal laws. Thus, the

"We think that it was sufficient for appellant to allege and prove she was rightfully (at least, without apparent wrong) in possession of the money and that it was immaterial whether she held it for some other person, in the absence of evidence that it had been stolen by the other person or otherwise obtained in violation of someone's rights or was legally subject to confiscation. The money should, therefore, be returned to her." (Id. at 65, 72 A.2d at 727).

7. The New Jersey statute, N.J.S.A. 2A:152–7, 8, 9 and 10, contains provisions essentially similar to subsections (a), (b) and (c) of § 264, set out in note 3, above. The principal difference is that if the criminal case is finally determined in favor of the person from whom the money was seized, Maryland requires that the custodian

return the money to him or to a third party claimant; whereas the New Jersey statute requires the party from whom the money was seized to show that the money belongs to him, and the state or county is permitted to show that the money had been used in gambling. See *State v. Link,* 14 N.J. 446, 102 A.2d 609 (1954), *McGill v. Essex County,* 87 N.J.Super. 367, 209 A.2d 369 (1965).

8. In a case involving a forfeiture statute (not Art. 27, § 264), the Court of Appeals of Maryland said: "Forfeiture is grounded in the legal fiction that an inanimate object can be guilty of a crime." *Prince George's County v. Blue Bird Cab Company,* 263 Md. 655, at 658, 284 A.2d 203, at 204 (1971).

United States is asserting an extraordinary power greater than and different from that involved in the cases above cited or any others upon which the United States relies. But we do not have to resolve the very real difficulties which this question presents, because this case can, and we think should, be decided on another ground." *United States v. Bleasby,* 257 F.2d 278, at 279–280 (3 Cir. 1968).

The ground for decision was that the judgment of forfeiture was a judgment in rem which was not subject to collateral attack by the United States in the circumstances of that case. Id. at 280.

In *State of New Jersey v. Moriarity,* 268 F.Supp. 546 (D.N.J.1967), which was not appealed, the court answered in favor of the State the question left open by the Third Circuit in *Bleasby.* Judge Coolahan stated:

"The theory of forfeiture of contraband is not that the criminal becomes indebted to the State or Federal government by using the property illegally. Rather, such forfeiture is a divestiture of the property without compensation which passes to the sovereign in consequence of an offense or a default. See 23 Am.Jur. Forefeiture, 624. Since no one has an absolute right to use property in ways contrary to the penal laws of the sovereign, property so used may be summarily seized, confiscated, and, in most cases, destroyed.

"The moment the property becomes forfeit contraband, all right, title and interest in the property held by the criminal, or subsequently gained by his creditors, assignees, or vendees, is transferred by operation of law to the sovereign.

" * * * *

"If the property has been forfeited and the taxpayer's rights therein extinguished prior to the tax levy, then the notion of competing liens is inapposite, since the levy cannot attach to the property at all. Therefore, the critical question is at what moment the article becomes forfeit contraband, and, in this regard, the legislative intent controls. Congress or State legislatures may decide upon what event divestiture under a forfeiture statute shall take place: whether on the commission of the offense, the seizure, or the final condemnation and decree. * * *

" * * * [T]he New Jersey statute follows the normal pattern of requiring a final hearing and formal decree of forfeiture to perfect the County's title to the monies. However, as the New Jersey Supreme Court interpreted the act, the county treasurer, pending the hearing, is made custodial officer not of money still belonging to an individual, but of money already seized and confiscated by the State." Id. at 562–563. (Citations and footnotes omitted.)[9]

■ The Maryland statute, Art. 27, § 264,[10] like the New Jersey statute, does not mean that the transfer of ownership of seized money occurs only after a formal decree of forfeiture. Both statutes provide that money seized in connection with a gambling arrest is "prima facie" contraband. The New Jersey court has construed this characterization to apply only to the standard of proof in the later forfeiture proceeding, *Spagnuolo v. Bonnet,* 16 N.J. 546, 109 A.2d 623 (1954), and this court concludes that the Maryland Court of Appeals would so construe the Maryland statute.

■ The next question is when title passes under the Maryland statute. Section 264(d) requires that seized moneys be returned to the last possessor (or another claimant with better right) after a disposition of criminal charges favorable to the

---

9. In a later case, the Third Circuit held that where the money is in the custody of the United States, a state court has no jurisdiction to decide its disposition in an in rem proceeding. *Stapleton v. $2,438,110,* 454 F.2d 1210 (3 Cir.

1972). In the instant cases, agents of the City had custody of the money.

10. As it read before the 1974 and 1975 amendments, see note 3, above.

accused, while the New Jersey statutory scheme permits forfeiture even after acquittal. Thus, in New Jersey, the use of currency in illegal gambling activities is sufficient to pass title to the county at the moment it is so used. In Maryland, the forfeiture of moneys used for illegal gambling activities seized in connection with an arrest occurs upon conviction of the person from whom the money was taken. The purpose of this requirement appears to be fairness to the accused. Be that as it may, the conviction takes on particular significance in the Maryland statutory scheme: until conviction, forfeiture is not possible; after conviction, the forfeiture proceeding merely perfects the prior passage of title. *United States v. Stowell,* 133 U.S. 1, 16–17, 10 S.Ct. 244, 33 L.Ed. 555 (1890); and see *Farley v. $168,400.97,* 55 N.J. 31, 38–39, 259 A.2d 201, 205 (1969).

Applying these principles to the instant cases, this court concludes:

*(1) Hawkins.* The federal tax lien attached on November 20, 1972 (IRC § 6321), after the conviction of Hawkins. Title to the money had already passed to the City on November 17, 1972, the date of the conviction. Judgment in the Hawkins case will be entered in favor of defendants.

■ *(2) Cork.* The federal tax lien attached on January 15, 1973, before the conviction of Cork, which occurred on May 2, 1973. Title to the money had not passed to the City before the federal tax lien attached. Judgment in the Cork case will be entered in favor of the United States for $6,730 against the City and its Director of Finance. The court is advised that the money is now being held by the Director of Finance on behalf of the City. The penalty claim of the United States under IRC § 6332(c)(2)—see note 2 above—is denied because defendants had reasonable cause to withhold the money pending decision of the questions raised herein. *United States v. Sterling National Bank & T. Co. of N.Y.,* 494 F.2d 919, 923 (2 Cir. 1974).

*(3) Hensley.* The federal tax lien attached on August 1, 1973.

(a) With respect to the money seized on May 31, 1973, title had passed to the City on June 13, 1973, when Hensley was convicted of violating Art. 27, §§ 356–371 (Lotteries).

■ (b) With respect to the money seized on June 15, 1973, Hensley was charged with bookmaking, but was never convicted of bookmaking or any other violation of Art. 27 of the Maryland Code. On June 15, 1973, he was also charged with and on June 22, 1973, he was convicted of the use of flash paper, in violation of a Baltimore City ordinance. Section 264(d) is unclear as to whether under these facts his conviction worked a forfeiture of the money seized at the time of his arrest. However, on January 29, 1974, in a proceeding to which the United States was not a party, a state court declared the money forfeited to the City. Because the United States was not a party to and has not been shown to have had notice of that proceeding, the judgment is not res judicata. Cf. *United States v. Bleasby,* 257 F.2d 278 (3 Cir. 1958). This court must assume however, that the judge of the state court considered the statute and construed it to require the forfeiture. In the absence of any decision to the contrary, this court concludes that it should accept that decision as a proper interpretation of § 264.

In the Hensley case, therefore, judgment will be entered in favor of the defendants with respect to both seizures.