981 A.2d 807

**Jeff Lien TSU et al.**

**v.**

**MONTGOMERY COUNTY, Maryland.**

**No. 1562, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Oct. 5, 2009.

Michael D. Dobbs (Dobbs & Baker, on brief), Rockville, for Appellant.

Karen L. Federman Henry (Leon, Rodriguez, County Atty., Marc P. Hansen, Jerome A. Nicholas, on brief), Rockville, for Appellee.

Panel: MEREDITH, KEHOE, MOYLAN, CHARLES E., JR. (Retired, Specially Assigned), JJ.

MOYLAN, J.

If $71,777 in eminently forfeitable cash has been sitting, since April 20, 2006, in legal limbo in the vaults of the appellee, Montgomery County, the appellants, Jeff Lien Tsu and Yuan Cheng, have done the County yeoman service by

causing to be made consummate a forfeiture that had arguably been theretofore only inchoate.

The $71,777 in cash is what the case law refers to as "derivative contraband." In *Director of Finance v. Cole,* 296 Md. 607, 619, 465 A.2d 450 (1983), the Court of Appeals explained the term:

> The items proceeded against in a forfeiture proceeding are characterized, at least for our purposes, as contraband. In this regard, *there are two types of contraband:* contraband *per se* (property which is inherently illegal to possess) and *derivative contraband (property which is legal to possess except for the circumstances, which make it illegal).* Contraband *per se,* of course, requires no proceeding for forfeiture. *Derivative contraband,* on the other hand, *does require some kind of showing that the property was used illegally.*

(Emphasis supplied).

The cash in question qualifies as derivative contraband by virtue of Maryland Code, Criminal Procedure Article, § 13–102 (Money presumed to be contraband) (a), which provides in pertinent part:

> (a) *In general.*—Money is prima facie contraband *if a law enforcement officer* in the State *seizes the money in connection with an arrest for:*
>
> . . . .
>
> (2) *unlawfully betting* on a horse race, athletic event, lottery, or game. . . .

(Emphasis supplied).

Immediately upon its seizure, the money vested in the Director of Finance of Montgomery County pursuant to subsection (b)(2), which provides in pertinent part:

> (b) *Vesting of money.*— . . . .
>
> (2) *All rights in, title to, and interest in money seized* under subsection (a) of this section *shall immediately vest in* . . . .

*(i) the county ... if the money is seized by the police* of the local government, including a sheriff's department that is the local law enforcement unit;

(Emphasis supplied).

### The Antecedent Showing That the Cash "Was Used Illegally"

At shortly before midnight on April 20, 2006, a Special Assignment Team of the Montgomery County Police Department, erroneously believing that it had chanced upon narcotics activity, stumbled upon a gambling operation instead. The explanation for such good fortune may well be the general truth that people sneaking about late at night, at the very least, arouse suspicion. Three suspect automobiles were observed making furtive contact with each other on the parking lot of the White Flint Mall in Kensington, exchanging brief greetings and transferring small packages. At the center of the web was Song Hong, driving a black Nissan Maxima, also occupied by a female companion, Hyo Lee. Hong parked the car outside Dave and Buster's Restaurant, near where the surveilling officers were positioned. Hong spoke briefly with someone on a cell phone. Almost immediately, Yuan Cheng arrived in a 2003 Acura and parked abreast of Hong's vehicle. Hong exited his own vehicle, walked to the passenger side of the Acura, and got in. As he was walking toward the Acura, he appeared to be concealing an object under his shirt. After several minutes, Hong got out of the Acura and returned to his own vehicle. On the return trip, Hong did not appear to have anything in his hands or concealed under his shirt. The Acura then drove to a different parking spot and parked again. The police eyebrows were raised.

Hong, who had initially been parked on the rear parking lot of the White Flint Mall, inexplicably left his parking place there and drove around to the front parking lot of the mall, where the police team described yet a second furtive hand-off. Hong parked at a spot well removed from other parked vehicles. Shortly thereafter, a black Toyota pulled in alongside him. One of the officers observed Hong hand, from

driver's window to driver's window, a white bag to the driver of the Toyota, who was later identified as the appellant Tsu. Tsu also had as a passenger in his vehicle, Vivian Tran. As soon as that baton had passed, the police pounced on both vehicles, sure that they had come upon the distribution of illicit drugs. Only then was it revealed that the alchemy of chance had turned suspected narcotics into gold.[1] As Sergeant Hill, a member of the team, approached Tsu's Toyota, he was able to see in plain view that the recklessly open white bag on the floor contained substantial cash.

Sergeant Hill obtained consent from both Tsu and Hong to search their respective vehicles. From the white bag on the floor of Tsu's Toyota, the police seized $54,650. Tsu told the police that the money represented his winnings from gambling on football. From Hong's Nissan Maxima, the police recovered a notepad with notations indicative of bookmaking. Hong admitted that he was a bookmaker and that he accepted wagers on professional and collegiate sports events. A consent search of Hong's person produced another $2,877.

Meanwhile, two other members of the police team moved in on Cheng's Acura. A consent search of it produced a bag containing another $14,250. Cheng told the officer that he had won the money in a "Texas Hold-em game" in Washington, D.C., and that the winnings had just been delivered to him.

Hong, Tsu, and Cheng were all taken by the police to the 2nd District Station to be interviewed by Detective Herbert of the Vice and Intelligence Unit. Tsu gave the following written statement:

> *I called* Eric (Song) *Hong earlier this evening to see if he had the money he owed me. He said he did so we agreed to meet* at the Dave & Busters at the White Flint Mall.

---

**1.** The unexpected turn of events also transformed what could have been a narcotics-related forfeiture under Criminal Procedure Article, Title 12, into a very different forfeiture pursuant to Title 13.

*He (Hong) owed me approx. $13,000.00 from betting on Football in 2005.*

I pulled into the parking lot of White Flint Mall at approx. 0030 hrs. *I parked next to Hong and he handed me a paper bag with the money inside.* we were still talking when you guys pulled up.

Q. How long have you been betting through Hong?

A. About 1 year. Sometimes he bets through me and sometimes I bet through him. Depending on who can get the best "juice".

(Emphasis supplied).

In his written statement, Cheng made the following admissions:

On 04/21/06 I met a guy at Dave & Buster's parking lot. This subject gave me $14,000 in cash. I then left Dave & Buster's sometime later on in the night and the police pulled me over.... I was ok with talking with the officers and having them search my vehicle. *The other officer then found a bundle of cash.* When asked where the money came from, I stated from playing Texas hold um playing in DC. *The officer then stated it was gambling money and which I stated it was.*

(Emphasis supplied).

All of the monies taken from all three vehicles that night, totaling $71,777, were hand counted and packaged by Sergeant Hill and were logged in as evidence at the 2nd District Police Station.

### The Criminal Case

On April 21, 2006, Hong was placed under formal arrest and was charged with a violation of Maryland Code (2002 Repl. Vol.), Criminal Law Article, § 12–102, "Betting, wagering, gambling, etc." Tsu and Cheng were not charged and were released. Hong was also served with and signed a Notice of Money Seizure form (Form MCP 559), reciting the lump sum of $71,777. On July 17, 2006, Hong entered a guilty plea in

the District Court to the gambling charge. At no time has he filed a claim for the return of the seized money.

It would seem that for the two closely related exchanges of gambling proceeds on the night of April 20–21, 2006, the appellants Tsu and Cheng could have been charged with criminal violations of the gaming laws just as surely as was Hong. Counsel for the appellants, however, at a hearing before Judge William J. Rowan, III, in the Circuit Court for Montgomery County on August 5, 2008, provided the explanation for the State's charging strategy:

> [T]he back story is the State's Attorney's Office wanted to use these two as witnesses against Mr. Hong. They didn't charge them.

That strategy no longer had to be implemented once Hong entered a guilty plea on July 17, 2006.

In any event, the guilty plea constituted a final disposition of the criminal case arising out of the events of April 20, 2006, on the parking lots of the White Flint Mall. Section 13–101(b) provides a definition of "Final disposition."

> *"Final disposition"* includes an acquittal, dismissal, nolle prosequi, finding of guilty, probation before judgment, *plea of guilty* or of nolo contendere, marking the charge "stet" on the docket, and an order of an appellate court ending a criminal case.

(Emphasis supplied).

The cash that was seized by the police on April 20–21, moreover, particularly the $54,650 seized from Tsu and the $17,250 seized from Cheng, indisputably represented gambling proceeds that constituted the evidence in that criminal case.

## The Status of the Cash

The issue in this case is whether a party bearing the obligation to alter the status quo with respect to the cash effectively did so. If such party fails to do so, the status quo remains unaltered. It is important at the outset, therefore, to establish just what the status quo was with respect to the cash seized on the early morning hours of April 21, 2006. As of the

moment it was seized "in connection with an arrest for ...
unlawfully betting," the cash was prima facie contraband.
§ 13–102(a). "All rights in, title to, and interest in" the cash
"immediately vest[ed]" in the Director of Finance of Mont-
gomery County. § 13–102(b). Pursuant to § 13–103, the mon-
ey was then photographed and recorded and deposited to the
account of Montgomery County. Pursuant to § 13–104, the
Director of Finance was responsible for "account[ing] for and
deposit[ing] seized money in an interest-bearing bank account
or invest[ing] the seized money in accordance with Article 95
of the [Maryland] Code." That was the status quo ante with
respect to the funds that are the subject of this appeal, and
nothing has effectively altered it.

■ Unless and until that status quo was altered, *Director
of Finance v. Cole*, 296 Md. at 623, 465 A.2d 450, leaves no
doubt that the money lawfully belonged to Montgomery Coun-
ty.

> Because it is within the power of the legislature to deter-
> mine when the transfer of rights to seized goods takes
> place, *the Maryland Legislature has fixed the point at the
> moment the seizure occurs. At this time the money* is
> *prima facie* contraband and *belongs to the jurisdiction
> whose authorities consummate the seizure.*

(Emphasis supplied).

That status quo, once established, is not lightly, automatical-
ly, or inferentially changed. It enjoys a truly Newtonian
staying power. *Director of Finance v. Cole*, 296 Md. at 631,
465 A.2d 450, made clear that even a *nol pros* of the gambling
charge, resulting in a presumption that the money was not
contraband, would not have altered that status quo.

> *Throughout the pendency of these proceedings* the charac-
> ter and *status of the money seized did not change one whit.*
> Once an ultimate disposition of *nol pros* was reached there
> was *prima facie* evidence that the money was not contra-
> band. Article 27, § (d)(2). However, all rights, title, and
> interest still had vested in the county and *until a civil
> proceeding was held to determine, by a preponderance of*

*the evidence, whether the money had in fact been part of a gambling operation, all rights, title, and interest would remain in the county.*

(Emphasis supplied).

Even a failed attempt by the County to forfeit the money, moreover, ending in a demurrer because the County had not satisfied a condition precedent, failed to alter the status quo.

> Within ninety days of the State's entry of *nol pros Prince George's County filed a petition for forfeiture of the funds* seized. This petition was demurred to in a civil proceeding and *the demurrer was properly sustained* by the trial judge *because there had been no conviction forming a basis for the State's application. Nonetheless, custody of the money was still vested in Prince George's County.*

*Id.* (emphasis supplied).

### A Hole in the Statutory Bucket

In terms of who or what may alter the status quo, the next two sections of the subtitle to be examined prescribe which parties may bring which formal actions with respect to the disposition of the seized funds. Section 13–105 points toward the forfeiture of the seized money by the governmental unit. Section 13–106, in turn, points in the opposite direction toward the return of the seized money to the suspect. The problem is (and it is the problem which permeates this case) that these two opposing procedures by no means exhaust the possibilities of the case. Title 13, Subtitle 1 is not a tightly drawn statute. There is a gaping hole in the bucket, and the statute does not presume to spell out, except by possible inference, what should happen if nobody performs as directed and if the money, therefore, threatens to remain in a legal limbo, neither forfeited nor returned.

■ Section 13–105(a) provides that an "application for the forfeiture of contraband shall be by complaint." Subsection (b) follows as the action clause:

> *If a conviction,* including a plea of guilty or plea of nolo contendere, *is entered against a person arrested in connec-*

*tion with the seizure* of the money, *the financial authority shall apply* to the District Court or circuit court *for an order forfeiting the money* to the jurisdiction that the financial authority serves.

(Emphasis supplied). Even a successful forfeiture proceeding, however, would not actually alter the status quo. It would simply "clinch" it. As Judge Roszel Thomsen characterized the phenomenon in *United States v. Mayor and City Council of Baltimore,* 416 F.Supp. 380, 387 (D.Md.1976), "[T]he forfeiture proceeding merely perfects the prior passage of title." *Director of Finance v. Cole,* 296 Md. at 619, 465 A.2d 450, uses the same language of "perfecting" the financial authority's already vested interest in the seized money.

[T]he forfeiture is a civil proceeding completely separate and apart from the criminal proceeding. *The result of the civil proceedings* either *perfects the government's interest in the goods* or results in a determination that they are not contraband and should be returned.

(Emphasis supplied).

Section 13–106, by contrast, points in the opposite direction and provides as follows:

(a) *In general.*—Seized money may be returned only as provided in this section.

(b) *Right to file.*—Subject to subsection (c) of this section, *on a final disposition a claimant may ask* the appropriate court *for a determination that the money is the property of the claimant and an order that the money be returned.*

(c) *Deadlines for filing complaint.*—A claimant under subsection (b) of this section must:

(1) apply within 1 year after the judgment or order was entered or the final disposition was taken;  and

(2) give written notice to the financial authority at least 10 days before filing the complaint.

(Emphasis supplied).

Section 13–107   then simply supplements both action sections and provides that at a hearing to resolve entitlement to

the seized money, either on a complaint for forfeiture under § 13–105 or on a complaint for the return of money under § 13–106, certain evidentiary presumptions will apply.

(a) *Prima facie evidence that money is not contraband.*—In a proceeding on a complaint for a return of money, *an acquittal, dismissal, or nolle prosequi* with respect to the gambling charges or indictments involved in the seizure of the money *is prima facie evidence that the money is not contraband.*

(b) *Prima facie evidence that money is contraband.*—*A conviction, plea of guilty or of nolo contendere,* or probation under § 6–220 of this article *is prima facie evidence that the money is contraband.*

(c) *Marking of "stet".*—Marking a charge "stet" on the docket does not create any presumption as to whether money is contraband.

(Emphasis supplied).

### Who Loses The Nothing–To–Nothing Tie?

On its surface, Title 13, Subtitle 1 creates two opposite-pointing burdens of going forward. It does not clearly spell out, however, the respective risks of non-production. If the County (or the State) enjoys the advantageous launching pad of a conviction on the gambling charge (or its functional equivalent), the Subtitle seems to contemplate that the County should go forward, pursuant to § 13–105, and file a complaint for the forfeiture of the money. When it does so, however, the County assumes the procedural obligation of properly serving process and of giving proper notice pursuant to § 13–105(a)(2):

The complaint shall be served in accordance with Maryland Rule 2–121 or 3–121(a), or if service of process is unable to be made and the summons is returned non est, substitute service may be made in accordance with Maryland Rule 2–122 or 3–121(b) or (c).

The County (or State) also assumes the obligation of proceeding within prescribed time limits pursuant to § 13–105(b)(2):

The financial authority shall apply for the order within 90 days after entry of the conviction or plea, unless the case is appealed.

If, on the other hand, the claimant, even without an advantageous launching pad, wants the benefit of a formal courtroom determination, the claimant may file for the return of the money pursuant to § 13–106. When the claimant does so, however, the claimant assumes the procedural obligation of filing the claim within prescribed time limits and of giving appropriate notice pursuant to § 13–106(c):

*Deadlines for filing complaint.*—A claimant under subsection (b) of this section must:

(1) apply within 1 year after the judgment or order was entered or the final disposition was taken; and

(2) gives written notice to the financial authority at least 10 days before filing the complaint.

The claimant also assumes the critical burden of proving that the seized money was **NOT** contraband.

The hole in the bucket is that neither party seems to have had expressly allocated to it the ultimate risk of non-compliance. If both parties do nothing, who gets the money? If both parties try but perform improperly, who gets the money? If both parties end up in default, which is the fatal default that will "trump" the more venial default?

## An Inferential Forfeiture Proceeding

Although the record in this case is frustratingly incomplete in this regard, we infer that Montgomery County timely filed a complaint for forfeiture pursuant to § 13–105 and that a District Court or circuit court judge properly ordered such forfeiture. There is regretfully not in the record, however, a copy of any such complaint, a record of any such hearing, an indication of when such a hearing took place before what judge in what court, or a copy of any forfeiture order. What we have to fill that gap, however, is the representation made by the appellants in their Plaintiffs' Opposition to Defendants'

Motion for Summary Judgment and Memorandum of Law In Support Thereof filed on June 16, 2008.

Song Hong's charges (M.C. District Court case number 0D00173558) were resolved on July 17, 2006 by way of a guilty plea. *The monies* seized from Plaintiff Tsu and Plaintiff Cheng *was forfeited to Montgomery County, specifically the Treasury Division of the Department of Finance.*

(Emphasis supplied).

Indeed, in their appellate brief the appellants again acknowledge that a forfeiture, even if a procedurally flawed one, formally took place.

Hong's charges (Montgomery County District Court case number 0D00173558) were resolved on July 17, 2006 by way of a guilty plea. Hong, who had no claim of right to the seized money, did not file a claim for return of the seized money. *The monies seized from Tsu and Cheng was forfeited to the County,* specifically the Treasury Division of the Montgomery County Department of Finance.

(Emphasis supplied).

Our inference that there was, indeed, a § 13–105 forfeiture we find weightier than the possible counter-inference based on an apparent counter-concession made by Montgomery County in its argument before Judge Rowan on August 5, 2008.

Mr. Hong was convicted as a result of this incident. The County's position is that as a result of his conviction, monies are contraband. Mr. Hong never requested the money back in the first place. *The County admits that it never filed a petition for forfeiture,* which it could have done, but it was not required to do so under the statute.

(Emphasis supplied). That statement, however, could be read as an acknowledgment that the County never filed petitions for forfeiture specifically against the appellants Tsu and Cheng.

If all of this really mattered, we would be in the unusual position of trying to decide which party before us had more effectively conceded away its case. Fortunately, however, it

does not really matter. The appellants' sole contention is not that a formal forfeiture never took place but, rather, that whatever forfeiture took place, formally or informally, was done without proper notice having been given to Tsu and Cheng. We are dealing, therefore, only with the lack of notice issue.

### Appellants' Complaint

■ The appellants filed their Complaint for Return of Money pursuant to § 13–106 on February 13, 2008. There was no allegation that a formal forfeiture had never taken place. The heart of the appellants' complaint was:

> Per §§ 13–108(b), "**For the seized money to be forfeited,** timely notice must be given by certified mail or other appropriate means to **any known claimants,** at their last known addresses, of the requirements of this section for making claim for the return of seized money." (emphasis added) In this case, no notice was provided to Plaintiffs prior to or subsequent to the forfeiture of their money.

(Emphasis in original).

### Summary Judgment

The County filed its Amended Answer to the complaint on April 3, 2008. On June 2, 2008, Montgomery County filed for summary judgment. It also filed on that date a Memorandum of Law in support of the motion. On June 16, 2008, the appellants filed their own Motion for Summary Judgment and Memorandum of Law in Support Thereof. Both motions agreed that there was no genuine dispute of material fact and that the motions merely required a ruling on the law. The case was ripe for summary judgment.

A hearing on the cross motions for summary judgment was conducted before Judge Rowan on August 5, 2008. At the conclusion of the hearing, Judge Rowan granted summary judgment in favor of Montgomery County and, accordingly, denied summary judgment in favor of the appellants. Judge Rowan voiced some of his thinking:

I'm going to bite the bullet, and the decision that the Court is going to make, although I must admit it's close in my mind, because of the *Vieira* case where you have cited to me that they did not follow the statutory remedy and the Court seemed to indicate in that case that albeit that it was contraband, it went back to the claimants. *But the Court is going to adopt the argument of Mr. Nicholas* [for the County] *that even if the complainants had timely filed for the money, they would not have ever gotten it back* had they received notice, et cetera, *because it would still have been stamped with its dress of contraband and contraband cannot be possessed by citizens lawfully.* Accordingly, the Court is going to grant the motion for summary judgment by Montgomery County and deny the motion for summary judgment by the plaintiffs.

(Emphasis supplied).

## The Contention

The appellants contend that the summary judgment decisions, as a matter of law, should have gone in the opposite direction, to wit, in their favor and against Montgomery County. They argue that they are entitled to the return of the money seized from them on the early morning of April 21, 2006.

Significantly, however, they do not remotely contend that they can offer any affirmative evidence to establish that they are entitled to the money pursuant to § 13–106. Their argument, rather, is that the failure of the County to do what it was procedurally obligated to do, to wit, to give them notice of a proposed claim for forfeiture pursuant to § 13–105, entitles them to a win by default. They place an exclusive burden of going forward with a forfeiture on the County. They then base their claim of victory exclusively on the proposition that the County deserved to lose. The appellants seek not a win on the merits, but a win by default. "We win because the County loses." Title 13, however, is not so neatly binary.

### The County's Admitted Procedural Failures

Montgomery County, indeed, acknowledges its procedural misprisons. Section 13-108 deals with "Grounds for forfeiture" and subsection (b) is very clear about the obligation to give notice to "any known claimants" to the seized money.

(b) *Timely notice required.*—For the seized money to be forfeited, timely *notice must be given* by certified mail or other appropriate means *to any known claimants,* at their last known addresses, of the requirements of this section for making claim for the return of seized money.

(Emphasis supplied).

At the hearing before Judge Rowan, the County acknowledged that it recognized Tsu and Cheng as possible "known claimants," that it knew their identities and their addresses, and that it had not given them notice of any intended forfeiture of the money to the County.

THE COURT: ... "For seized money to be forfeited, timely notice must be given by certified mail or other appropriate means to any known claimants at their last know address." Now, *I take it that Montgomery County always, right from the get-go, knew the names of the two plaintiffs in this case.*

MR. NICHOLAS: *Yes, we did.*

THE COURT: *And how to get a hold of them* if they wanted them.

MR. NICHOLAS: *Yes, we did.* ... [A]nd *we did not give them notice.* We gave Mr. Hong notice, the bookmaker notice that we were seizing the funds that he was delivering to the ... plaintiffs.

THE COURT: So your argument basically is that overriding all of this, the money is contraband and they're not entitled to possess contraband.

MR. NICHOLAS: Correct.

(Emphasis supplied).

If the appellants were entitled to the return of the money based on the County's procedural missteps, their case would be solid.

## A Claimant For the Return of Money
## May Not Win By Default

■ We nonetheless affirm the summary judgment grants by Judge Rowan. Under Title 13, Subtitle 1, a claimant for the return of money seized as part of a gambling arrest cannot win because of the financial authority's procedural neglect. A return of the money is contingent on affirmatively satisfying the requirements of § 13–106, whereby a win can only be earned by the claim's merit and not by the opponent's demerits. Subsection (a) provides no alternative route:

*Seized money may be returned only as provided in this section.*

(Emphasis supplied).

Prior to 1977 a claimant for the return of seized money might have relied, to be sure, upon the procedural ineptitude of the seizing authority. If *United States Coin and Currency v. Director of Finance of Baltimore City,* 279 Md. 185, 367 A.2d 1243 (1977), were still good law, the appellants would be in clover. In that case, $21,162 had been seized in a gambling raid. Following verdicts of guilty on the gambling charges, Baltimore City had 90 days, pursuant to what was then Art. 27, § 264(c) (now Criminal Procedure Article, § 13–105(b)(2)), to petition for the forfeiture of the $21,162. The Baltimore City Director of Finance filed a petition for forfeiture 119 days later, 29 days late. The Court of Appeals was unforgiving.

We determine that *by inaction the director forfeited his rights with respect to this coin and currency;* consequently, we will reverse the order of the Baltimore City Court vesting title to that money in the city.

*Id.* at 186, 367 A.2d 1243 (emphasis supplied).

Judge Digges's opinion announced the Court's conclusion that

*the General Assembly has now mandated* that the right to institute a proceeding for the forfeiture of seized contraband has *as a condition precedent that the petition be filed within the 90–day period* set out in the statute.

*Id.* at 187–88, 367 A.2d 1243 (emphasis supplied). The opinion also held that an announced intention to file for forfeiture is no substitute for the actual filing of the petition itself.

> [W]e have no choice but to conclude that *the petition must be dismissed as untimely.* Accepting as true that the appellee indicated an intention within the 90–day period to claim a forfeiture, we hold that *such an intention,* no matter how manifested by the governmental agency, *will not act as an effective substitute for the actual filing of a petition.*

*Id.* at 188, 367 A.2d 1243 (emphasis supplied). Although the opinion does not tell us, presumably the $21,162 was returned to the husband and wife from whom it had been seized and did not remain in indefinite limbo.

The appellants' continuing reliance on *United States Coin and Currency v. Director of Finance of Baltimore City,* however, is as untimely as was the filing of the forfeiture petition in that case itself. The opinion in the case was filed on January 13, 1977. Chapter 720 of the Acts of 1977 wrought significant changes in the forfeiture law for gambling proceeds. The amended law, which significantly superseded the holding of that case, took effect on July 1, 1977.

*Director of Finance of Prince George's County v. Cole,* 48 Md.App. 633, 428 A.2d 1227, was decided by this Court on May 11, 1981. Fifteen Thousand Five Hundred Dollars in cash had been seized in a gambling raid. The cash was turned over to the Director of Finance of Prince George's County. Because of a Fourth Amendment exclusionary problem, the gambling charges were ultimately nol prossed. Notwithstanding the nol pros, the County petitioned for the forfeiture of the seized money. The persons from whom the cash had been seized demurred to the forfeiture petition on the ground that a conviction (or its functional equivalent) is a condition precedent to forfeiture and had not been satisfied. The trial court sustained the demurrer and this Court affirmed:

> [M]anifestly, *the entry of a conviction is a condition precedent to the filing of a petition for forfeiture* by the County. As the County here concedes, the court below was correct in

sustaining the appellee's demurrer where a *nolle prosequi* was entered as to the criminal charges against the appellees.

*Id.* at 635, 428 A.2d 1227 (emphasis supplied).

Under the pre–1977 law, that striking of the forfeiture petition would have mandated the return of the cash to the persons from whom it had been seized. The trial judge in the case did, indeed, so order. In reversing that order, Judge Thompson made it clear that

> *[i]t does not necessarily follow that, because the County could not properly file a petition for forfeiture, the appellees were entitled to the return of the seized money. Although formerly § 264(d) provided that* "[i]f the trial or other ultimate disposition of such charge or charges ... results in an acquittal or dismissal ... *the [money] shall be returned to the person* " and forfeiture could occur only if a conviction were obtained, *this subsection was amended* by Chapter 720, *Laws of Maryland,* 1977.

*Id.* (emphasis supplied).

Under the new law, a claimant for the return of the seized money can no longer prevail simply because the County is in procedural default. Notwithstanding the nol pros of the gambling charges in that case, the seized cash was still, on the substantive merits, contraband. If a claimant wanted the money back, the burden was on that claimant 1) to file for its return and 2) to prove that it was not contraband.

> Under the present § 264(d), *money seized* in connection with an arrest for illegal gambling *is not automatically returned* to the persons from whom it was seized *when the charges are disposed of without a conviction.* Rather, *the money is to be returned only when the claimant files a petition for its return and proves that it is not contraband.* While the dismissal of the charges against the claimant is *prima facie* evidence that the seized money is not contraband, *the presumption thereby created is not conclusive. Although,* absent a conviction, *the county cannot properly file a petition for forfeiture, it may be able to obtain*

*forfeiture when the claimant seeks return of the money by proving that the money is contraband.*

*Id.* at 636, 428 A.2d 1227 (emphasis supplied).

### The County, By Contrast, May Win By Default

The decision of this Court in our *Director of Finance v. Cole, supra,* is not what was before the Court of Appeals in its *Director of Finance of Prince George's County v. Cole,* 296 Md. 607, 465 A.2d 450 (1983). The Court of Appeals was, rather, dealing with a later but closely related stage of the same litigation. The Court of Appeals confirmed that *United States Coin and Currency v. Director of Finance, supra,* had been superseded by the 1977 amendments to the forfeiture law and that a claimant for the return of seized money may no longer prevail simply by relying on the procedural failures of the financial authority.

> [T]he Legislature in enacting § 264(d) seems to have modified our holding in *United States Coin & Currency v. Dir.,* 279 Md. 185, 367 A.2d 1243 (1977), that the seizing jurisdiction's untimely filing caused it to lose its claim to the money. Under § 264(d) *the claimant does not become entitled to the money merely because the governmental entity fails to file for forfeiture within ninety days. The claimant still must apply for its return* and *he must do so within one year* after the date of the judgment of conviction. *He then must also overcome the presumption that the money is contraband. Failing either condition, § 264(d)(3) would forfeit the seized money to the custodian.*

296 Md. at 630, 465 A.2d 450 (emphasis supplied).

Judge Cole's opinion expressly stated that an affirmative burden is on a claimant for the return of seized money both 1) to initiate a claim and, 2) at the hearing on that claim to prove that the money is not contraband.

> *Seizure of money pursuant to gambling violations,* by legislative determination, *transforms that money into prima facie contraband.* Article 27, § 264(a) [now § 13–102(a)]. *Until evidence is presented to rebut this statutory*

*inference, it is illegal for anyone other than the seizing authority to possess the money.* [Section 13–102(b)] vests all rights, title, and interest in the money at the moment of seizure in the seizing jurisdiction.

The proceeding to determine whether the money shall be forfeited or returned to its claimant is a civil in rem proceeding where the money itself is the thing proceeded against and which is unconnected with any criminal proceeding. The standard of proof, therefore, is the preponderance of the evidence standard.

*Id.* at 629, 465 A.2d 450 (emphasis supplied).

The ultimate disposition of the criminal charge in this case was by way of a guilty plea. The Court of Appeals opinion further states unequivocally that "if the ultimate disposition is the result of a plea of guilty . . . , then the money is presumptively contraband . . . and any claimants must apply for its return within one year *and prove that it was not used illegally.*" 296 Md. at 630, 465 A.2d 450 (emphasis supplied).

Section 13–108, "Grounds for forfeiture," finally provides two bases for forfeiture based exclusively on the failure of a claimant for the return of money either 1) timely and properly to file a claim or 2) to prevail on the merits of such a claim.

(a) *In general.*—Subject to subsection (b) of this section, if a complaint is not timely and properly filed or *if the action is finally decided against the claimant, the seized money* not disposed of *shall be forfeited* to the custodian *without further judicial action.*

(b) *Timely notice required.*—For the seized money to be forfeited, timely notice must be given by certified mail or other appropriate means to any known claimants, at their last known addresses, of the requirements of this section for making claim for the return of seized money.

(Emphasis supplied). The notice requirement of subsection (b) would clearly apply to the first category of failure, to wit, the failure timely and properly to file a claim. The second type of failure seems to contemplate that the complainant is

not only on notice but is also in court, before then losing the case.

The financial authority thus now has a second arrow in its procedural quiver. Even if it misses on its initial shot at forfeiture, it still gets a second chance to knock down the claimant's petition for the return of the money. It is by that second shot that Montgomery County will prevail in this case.

In this case, the appellants filed their claim for the return of the seized money on February 13, 2008. Whether that was within one year of the "final disposition" of the criminal charge, as required by § 13–106(c)(1), is unnecessary for us to consider,[2] because the County raised no issue in that regard either before Judge Rowan or before us.

The appellants' claim for the return of the seized money, pursuant to § 13–106, was properly before the court. With no fact in dispute and no evidence needing to be presented, the hearing of August 5, 2008 before Judge Rowan on the cross-motions for summary judgment was a hearing on the legal merits of the case. The appellants proffered no shred of evidence to rebut the presumption that the seized money was contraband. Accordingly, they lost the case. If to any extent, the vesting of title and interest in the $71,777 in Montgomery County had theretofore been only inchoate, Judge Rowan's rulings of August 5, 2008 served "to perfect the prior passage of title." In terms of § 13–108(a), "the action [was] finally decided against the claimant[s]" and the monies were thereby "forfeited to the custodian without further judicial action." Q.E.D.

### The Pluralism of Forfeiture Laws

The appellants were nonetheless able to fill the air, as they have done, with scathing negative rhetoric about a very different forfeiture law not involved in this case. Relying primarily on *Vieira v. Prince George's County*, 101 Md.App. 220, 645

---

2. Did the one year begin to run when Hong entered his guilty plea on July 17, 2006, or not until the one-year statute of limitations had run on the possible charging of Tsu and Cheng as of April 21, 2007?

A.2d 639 (1994), and obliquely on phraseology from such cases as *Commercial Credit Corp. v. State*, 258 Md. 192, 265 A.2d 748 (1970); *State of Maryland v. One 1979 Pontiac Firebird*, 55 Md.App. 394, 462 A.2d 73 (1983); and *1995 Corvette v. Mayor and City Council of Baltimore*, 353 Md. 114, 724 A.2d 680 (1999), the appellants proceed from a false assumption. For strategic purposes, they would like to treat forfeiture as a monolithic singularity. It is no such thing.

An indispensable key to understanding forfeiture law is to understand that there is no forfeiture law. That is not to say, however, that there are not many forfeiture laws. To get a firm grip on them, it is only necessary to master three simple rules: 1) Think plural; 2) Think plural; and 3) Think plural. Forfeitures in Maryland are exclusively creatures of statute. There are basically three forfeiture laws. They vary widely in their purposes, in their histories, and in their procedural appurtenances. What is true of one is by no means necessarily true of another.

## A.  Title 12:  Drug–Related Forfeiture

The most celebrated and most litigated of Maryland's forfeiture laws is that covering the forfeiture of a sweeping range of property, real and personal, used in conjunction with violations of the controlled dangerous substances laws. It is now spelled out in Criminal Procedure Article, Title 12, "Forfeiture–Controlled Dangerous Substances Violations," §§ 12–102 through 12–505. Prior to the recodification of 2001, this forfeiture law was found in Article 27, § 297. Its history in Maryland traces to Chapter 471 of the Acts of 1951. *Commercial Credit Corp. v. State*, 258 Md. at 196–97, 265 A.2d 748; *Prince George's County v. One 1969 Opel*, 267 Md. 491, 298 A.2d 168 (1973). See also *Boyd v. Hickman*, 114 Md.App. 108, 118–21, 689 A.2d 106 (1997).

Two of the more notorious and arguably harshest aspects of that particular forfeiture law are the only two features of forfeiture in Maryland today that survive, in their doctrinal rationale, from the medieval concept of deodand ("Deo dan-

dum"—"It should be given to God."). That ancient rationale stemmed from the once prevalent belief that even an inanimate object, if it were the instrumentality of a forbidden crime, should be forfeited to the ecclesiastical authorities (and, post-Henry VIII, to the Crown or to the State), notwithstanding what may have been the total innocence of the owner of the forfeited thing. That was the forfeiture context that prompted Judge Digges's comment in *Prince George's County v. Blue Bird Cab Co.*, 263 Md. 655, 662, 284 A.2d 203 (1971), that "in some ways [§ 297] is a harsh law." In that case, a leasing company suffered the forfeiture of an automobile because a lessee, unknown to it, had used the vehicle to transport and to sell drugs. Sections 12–102 and 12–103 go into extensive detail as to the conditions under which cars, trucks, boats and other conveyances and even family homes may or may not be forfeited. That is the forfeiture law that has sometimes incurred harsh condemnation and that has occasioned the demand for strict construction. That is the forfeiture law that was involved in such cases, cited by the appellants, as *Vieira, Commercial Credit Corp., 1995 Corvette*, and *One 1979 Pontiac Firebird*. That is not, however, the forfeiture law that we are dealing with in the case now before us. Ours is not a narcotics-related Subtitle 12 forfeiture.

## B. Title 13, Subtitle 1: Gambling–Related Forfeiture

The forfeiture law with which we are concerned in this case is a far milder statutory creation. It deals only with the forfeiture of the cash found to have been the proceeds of illegal gambling activity. This particular forfeiture law does not in any way involve the taking by the State of the homes or automobiles or boats of sometimes totally innocent persons whose property may inadvertently have been an instrumentality in someone else's narcotics trafficking. Those are the seizures that have sometimes brought Title 12's forfeiture law into ill repute, *see Boyd v. Hickman, supra,* and they have nothing to do with the Title 13 forfeiture law now under our review.

Title 13 of the Criminal Procedure Article, by contrast, deals expressly with "Other Forfeitures." It deals with two such other forfeiture laws. Subtitle 1, our forfeiture law of the hour, is denominated "Gambling Violations" and controls the forfeiture of the cash which is determined to be the proceeds of the gambling operations. Before the 2001 recodification which created the Criminal Procedure Article, this particular forfeiture law was found in Article 27, § 264, whence it has been brought without substantive change into the new Title 13, Subtitle 1. Its history in Maryland traces to its first enactment by Chapter 299 of the Acts of 1951. Its purpose, as stated in the preamble, was to provide a mechanism for "the confiscation in certain counties of money, currency or cash seized or captured in connection with any arrest for illegal gambling or operation of any lottery." The history of what is now Title 13, Subtitle 1 has been thoroughly summarized by Judge Cole in *Director of Finance of Prince George's County v. Cole*, 296 Md. 607, 621–31, 465 A.2d 450 (1983).

In *Bozman v. Office of Finance of Baltimore County*, 52 Md.App. 1, 445 A.2d 1073 (1982), *aff'd*, 296 Md. 492, 463 A.2d 832 (1983), this Court was dealing with a forfeiture in a narcotics case, pursuant to what was then Article 27, § 297. The defense attempted to draw an analogy between that narcotics-related forfeiture law and the gambling-related forfeiture law of what was then Article 27, § 264. Chief Judge Gilbert rejected the analogy as inapt, taking pains to point out that these distinct forfeiture laws have distinct features and distinct procedural requirements.

Md. Ann.Code art. 27, § 264, allows forfeiture of monies seized as a result of a gambling arrest. The statute mandates that forfeiture shall be commenced within 90 days of "conviction." *The appellant adroitly likens section 264 to section 297, and, while not specifically suggesting that we read the statutes to be in pari materia, very gently prods us in that direction.*

*We think that the Legislature meant to draw, and did draw a sharp distinction between forfeitures in gambling*

*cases and forfeitures in controlled dangerous substances matters.*

52 Md.App. at 9, 445 A.2d 1073 (emphasis supplied). We similarly reject any analogy between this case and *Vieira v. Prince George's County, supra.*

## C. Title 13, Subtitle 2: Gun Law–Related Forfeiture

For the sake of completeness we also note that Title 13, in Subtitle 2, deals with yet an additional "Other Forfeiture." Subtitle 2 controls the forfeitures of guns and ammunition seized in connection with "Violations of Gun Laws." Subtitle 2 was taken, without substantive change, from what had been, prior to the recodification of 2001, Article 27, § 36C. This particular forfeiture law traces back to 1972. Its purpose and origins are described by Judge Menchine in *State v. Crist,* 34 Md.App. 300, 307–09, 367 A.2d 61 (1976).

### Beware of Indiscriminate Generality

There being a profusion of forfeiture laws, our closing advice is, "Don't cite forfeiture case law indiscriminately; cite cases dealing with the specific forfeiture law that is applicable on a given occasion." All forfeitures need not be frowned upon as if the State, in a narcotics case, were about to confiscate the home or the automobile of an innocent and helpless widow because of the unsuspected sins of an errant grandson. The appellants here cannot squeeze under that umbrella.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**